**UNITED STATES of America, Plaintiff–Appellee–Cross–Appellant,**

v.

**Jose Juan ZARATE–MARTINEZ, Defendant–Appellant–Cross–Appellee.**

**Nos. 97–10212, 97–10218.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1997.

Decided Jan. 13, 1998.

Maria C. Borbon, Rosemary Marquez, Assistant Federal Public Defender (oral argument), Tucson, AZ, for Defendant–Appellant–Cross–Appellee.

John P. Leader, Assistant United States Attorney, Tucson, AZ, for Plaintiff–Appellee–Cross–Appellant.

Before: ALDISERT,* D.W. NELSON and TASHIMA, Circuit Judges.

ALDISERT, Circuit Judge:

The appeal by Jose Juan Zarate–Martinez from judgment and sentence for a violation of 8 U.S.C. § 1326(b)(1), reentry after deportation subsequent to a felony conviction, requires us to decide if his due process rights were violated because he had no meaningful opportunity for judicial review of the underlying deportation order and whether he was denied equal protection because one of the cocaine convictions underlying his deportation resulted from California's unlawful failure to provide him with drug rehabilitation treatment. He entered a conditional guilty plea subject to our review of his claims of constitutional violations.

We must consider also the cross-appeal of the government that the district court erred in reducing the offense from an "aggravated felony" charge under § 1326(b)(2) to the lesser included reentry offense under § 1326(b)(1). We affirm the judgment on Zarate–Martinez' appeal, but on the cross-appeal we vacate the judgment and sentence and remand with a direction that the district court reinstate the aggravated felony charge under § 1326(b)(2) and permit Zarate–Martinez to plead anew to the reinstated indictment.

### I.

Zarate–Martinez first entered the United States when he moved with his family to Los Angeles in 1981. He was 13 at the time. Subsequent to his arrest by California authorities in January 1993 for possession of 0.66 grams of cocaine, Zarate–Martinez was convicted in Superior Court of possession of a controlled substance and sentenced to three years probation and 365 days in prison. In August 1993 he ran afoul of state law again. He was arrested for possession of 2.15 grams of cocaine, and again was convicted of possession of a controlled substance. He was sentenced to three years probation and 100 days in prison. In September 1993,

---

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

his probation was revoked and he was sentenced to two additional years in prison. He was paroled in October 1994.

Upon his release, the Immigration and Naturalization Service immediately sought to deport him. He attended a mass deportation hearing in El Centro, California on October 6, 1994. There, the immigration judge addressed 22 potential deportees as a group and Zarate–Martinez individually before determining that he was deportable. He was thereafter deported to Mexico. A mere three months later, on January 12, 1996, Zarate–Martinez was arrested by federal authorities after illegally reentering the United States through a hole in a fence near Nogales, Arizona. He was indicted and charged with violating 8 U.S.C. § 1326(b)(2), illegal reentry after deportation subsequent to an aggravated felony conviction. Zarate–Martinez made motions to dismiss alleging, *inter alia*, that: (1) he had not been convicted of an aggravated felony; (2) the unlawfulness of the underlying deportation was a due process bar to his conviction; and (3) he had been denied equal protection by California's failure to provide him substance abuse treatment following his first drug conviction in January 1993.

The district court concluded that Zarate–Martinez' prior conviction for possession of cocaine was not an aggravated felony. Rather than dismiss the indictment, the court reduced the charge to a violation of 8 U.S.C. § 1326(b)(1), reentry after deportation subsequent to a felony conviction.

The district court denied Zarate–Martinez' motion to dismiss based on unlawful deportation, holding that he had failed to show prejudice. The district court did not address the equal protection issue. On March 5, 1997, Zarate–Martinez entered a conditional guilty plea to violating § 1326(b)(1) and was sentenced to 24 months imprisonment and 36 months supervised release.

## II.

In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation. *United States v. Mendoza–Lopez*, 481 U.S. 828, 839, 107 S.Ct. 2148, 2155–2156, 95 L.Ed.2d 772 (1987). If the defendant's deportation proceedings fail to provide this opportunity, the validity of the deportation may be collaterally attacked in the criminal proceeding. *Id.* Zarate–Martinez can succeed in this collateral challenge only if he is able to demonstrate that: (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. *See United States v. Leon–Leon*, 35 F.3d 1428, 1431 (9th Cir.1994). In his Supplemental Motion to Dismiss, Zarate–Martinez properly raised the due process issue in the district court. Accordingly, we are permitted to decide this issue on the merits.

### A.

"Although a deportee may waive his right to judicial review of his deportation order, that waiver must be considered and intelligent. Otherwise, the deportee is deprived of judicial review in violation of due process. The government bears the burden of proving the waiver." *United States v. Lopez–Vasquez*, 1 F.3d 751, 753–754 (9th Cir. 1993) (internal citations and quotations omitted).

We are satisfied that the government failed to meet the burden of proving that either the group colloquy or Zarate–Martinez' individual interrogation with the immigration judge met the waiver requirements we set forth in *Lopez–Vasquez*. 1 F.3d at 754 (prohibiting "[m]ass silent waiver"). The immigration judge first engaged in a group colloquy with the detainees. After explaining the appeals process, he asked:

THE COURT: .... You all understand that you *will have* the right to appeal.

A: Everyone answers yes. (Interpreter)

ER at 24 (emphasis added). This exchange is insufficient to constitute waiver. Although this question did require an audible response, it only informed the detainees of the right to appeal and suggested to them that the opportunity to appeal would be presented at some future time. The colloquy continued:

THE COURT:.... If anyone of you wants to fight its (sic) case to try to stay in the United States, please raise your hand. There are no hands raised.

*Id.* This latter exchange is indistinguishable from the silent waiver that we condemned in *Lopez–Vasquez.* The hand-raising request "tended to stigmatize detainees who wished to appeal and to convey a message that appeal was disfavored and contingent upon further discussion with the immigration judge." *Lopez–Vasquez,* 1 F.3d at 754.

The immigration judge later had an individual conversation with Zarate–Martinez:

THE COURT: Do you understand your rights?

ZARATE: Yes.

. . .

THE COURT: Anything else you'd like to say?

ZARATE: No.

ER at 32–33. These statements, while not suffering from the stigmatization problems of a mass silent waiver, do not qualify as an express or implied "voluntary and intelligent" waiver of his right to appeal. We conclude, therefore, that Zarate–Martinez' due process rights were violated by the defects in his deportation proceeding. This, however, is only the first prong of the necessary inquiry.

### B.

■ To succeed in his collateral challenge, Zarate–Martinez must prove prejudice as a result of the due process violation in his deportation proceeding. *United States v. Alvarado–Delgado,* 98 F.3d 492, 493 (9th Cir. 1996) (en banc), *cert. denied,* —— U.S. ——, 117 S.Ct. 1096, 137 L.Ed.2d 228 (1997). This requires him to offer "plausible grounds of relief which might have been available to him but for the deprivation of rights." *Leon–Leon,* 35 F.3d at 1432. Zarate–Martinez ar-

gues that he was prejudiced because, had he the opportunity to appeal, he possibly could have persuaded the Board of Immigration Appeals to grant a discretionary suspension of deportation.

Prior to April 1, 1997, Zarate–Martinez would have been eligible for suspension of deportation only if he had:

been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional or extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1254(a)(2). Under the old statutory scheme, this subsection would provide the relevant analytical framework because, as discussed in part IV *infra,* Zarate–Martinez had been convicted of an "aggravated felony." 8 U.S.C. §§ 1251(a)(2)(A)(iii), 1254(a)(2).[1]

With the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Congress amended the Immigration and Naturalization Act, eliminating 8 U.S.C. § 1254 on "suspension of deportation," and replacing it with a new provision, entitled "Cancellation of removal." This section provides that an alien is eligible for cancellation of removal if he or she:

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

---

1. Both parties analyzed this issue under the standard of § 1254(a)(1). Section 1254(a)(1), however, is inapplicable when an individual is deportable under a law specified in § 1254(a)(2). Because Zarate–Martinez was deportable under a law specified in § 1254(a)(2), that subsection-not § 1254(a)(1)-provides the proper framework for analyzing his eligibility for suspension of de-

portation under the old statutory scheme. We note, however, that even if § 1254(a)(1) applied, Zarate–Martinez would not be eligible for a suspension of deportation because his "aggravated felony" conviction, *see infra* part IV, precludes a finding that he is of "good moral character." 8 U.S.C. § 1101(f)(8).

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title; and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1).

The question of whether § 1229b applies retroactively was deferred in *Astrero v. INS*, 104 F.3d 264, 266 (9th Cir.1996), when this court decided only that the amendments would not apply retroactively before their effective date. We need not address the question of whether § 1229b(b) should be given retroactive effect because we conclude that under either the old § 1254(a)(2) or the new § 1229b(b), Zarate–Martinez is ineligible for suspension or cancellation of deportation.

■ The most clear-cut factor that precludes relief under either standard is the August 1993 California conviction, which was an aggravated felony. Part IV *infra*. This factor precludes Zarate–Martinez from receiving discretionary relief for different reasons under each statute. Under the old § 1254, Zarate–Martinez only is eligible for suspension of deportation if he has maintained ten years of continuous presence in the United States subsequent to his conviction. This he clearly has not done, as less than five years have elapsed since the August 1993 conviction.

■ Under the new § 1229b, this conviction is a per se bar to cancellation of deportation. Section 1229b allows for cancellation of deportation only if the detainee "has not been convicted of" an "aggravated felony." §§ 1229b(b)(1)(C), 1227(a)(2)(A)(iii).

Because Zarate–Martinez is ineligible for relief from deportation under either standard, it is clear that the Board of Immigration Appeals could not have exercised its discretion to suspend his deportation. He was not, therefore, prejudiced by the due process violation in his deportation hearing, and may not use that violation to attack his conviction under § 1326.

### III.

Zarate–Martinez contends also that he was denied the equal protection of the law guaranteed by the Fourteenth Amendment because California failed to provide him statutorily-mandated drug rehabilitation after his first cocaine conviction. He argues that this would have prevented his second cocaine conviction.

A federal court defendant may collaterally attack predicate state court convictions only if they were obtained in violation of the Sixth Amendment right to counsel. *See Custis v. United States*, 511 U.S. 485, 496–497, 114 S.Ct. 1732, 1738–1739, 128 L.Ed.2d 517 (1994). No such allegation is made here. In *Custis*, the defendant attempted to attack collaterally the constitutionality of his prior state court convictions, which permitted sentence enhancement. The Court held that he could challenge his convictions on Sixth Amendment grounds only. 511 U.S. at 496, 114 S.Ct. at 1738–1739. In doing so, the Court held that its prior decision in *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), did not permit other collateral constitutional challenges to state court convictions. *Id. Burgett* held that any state court conviction obtained in violation of the Sixth Amendment could not "be used against a person either to support guilt or enhance punishment for another offense." 389 U.S. at 115, 88 S.Ct. at 262.

■ *Custis* dealt only with the use of state convictions for sentence enhancement, but by analogy its reasoning extends to the similar use of prior convictions to establish guilt. First, the Court noted that "running through our decisions ... has been a theme that failure to appoint counsel for an indigent defendant [is] a unique constitutional defect." *Custis*, 511 U.S. at 496, 114 S.Ct. at 1738. Second, the Court held that the "interest in promoting the finality of judgments" counseled against extending *Burgett* to all claims of constitutional defect. *Id.* at 497, 114 S.Ct. at 1739. We hold that the teachings of *Custis* preclude collateral attacks on prior state court convictions whether they underlie the charged offense or are used to enhance sentence, unless a Sixth Amendment issue is

involved. *Accord United States v. Gutierrez–Cervantez,* 132 F.3d 460, 462 (9th Cir. 1997).

Accordingly, we reject Zarate–Martinez' contentions of constitutional deprivation. We now turn to the government's cross-appeal, which contends the district court erred in determining that Zarate Martinez' second state conviction did not constitute an "aggravated felony."

## IV.

At the time of its disposition in this case, the district court did not have the advantage of our teachings in *United States v. Garcia–Olmedo,* 112 F.3d 399 (9th Cir.1997), in which we held that a second state court conviction for simple possession of narcotics is an aggravated felony under § 1326(b)(2). In *Garcia–Olmedo,* the defendant twice had been convicted of simple possession of marijuana in Arizona state court. *Id.* at 400. We held that the second conviction constituted an "aggravated felony" under § 1326(b)(2) because:

> The term "aggravated felony," as defined in 8 U.S.C. § 1101(a)(43), includes "any drug trafficking crime as defined in section 924(c)(2) of Title 18." Section 924(c)(2) of Title 18 in turn defines "drug trafficking crime" broadly to include "any felony *punishable* under the Controlled Substances Act." (emphasis added).
>
> In order for Garcia–Olmedo's marijuana possession convictions to meet the definition of an aggravated felony, the offense must be (a) punishable under the Controlled Substances Act and (b) qualify as a felony. First, § 844(a) of the Controlled Substances Act states that a second conviction for possession of narcotics is punishable as a felony. . . .
>
> Second, a felony is defined under the Controlled Substances Act as "any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13). Under 18 U.S.C. § 3559(a), an offense is a felony if the maximum term of imprisonment authorized for the offense is "more than one year." The maximum penalty under 21 U.S.C. § 844(a) for simple possession with a prior conviction is two years. Because Garcia–Olmedo had one

> prior conviction, the literal application of §§ 844(a) and 3559(a) render (sic) the 1990 and 1991 possession convictions felonies.
>
> Having satisfied the two prerequisites, Garcia–Olmedo's 1990 and 1991 convictions meet the definition of an "aggravated felony" under 8 U.S.C. § 1101(a)(43).

*Id.* at 400–401 (internal citations omitted).

We conclude that the holding of *Garcia–Olmedo* must apply because the material facts here are indistinguishable from the facts in that case. Zarate–Martinez was convicted of possession of a controlled substance in January 1993. His second conviction for possession of a controlled substance in August 1993 was punishable under the Controlled Substances Act, 21 U.S.C. § 844(a), by imprisonment of up to two years. This possible two-year prison sentence under federal law makes the crime a felony under 21 U.S.C. § 802(13) and 18 U.S.C. § 3559(a). Because Zarate–Martinez' August 1993 conviction was both punishable under the Controlled Substances Act and a felony, it qualifies as an "aggravated felony" under 8 U.S.C. § 1101(a)(43).

Rather than attempt to distinguish *Garcia–Olmedo,* Zarate–Martinez' brief devotes over four pages to arguing that it was wrongly decided. We lack the power to reconsider another panel's decision. *See Roundy v. Commissioner,* 122 F.3d 835, 837 (9th Cir.1997) ("A three-judge panel is bound by a prior judgment of this court unless the case is taken en banc and the prior decision is overruled.").

In determining that the August 1993 conviction was not an aggravated felony, the district court relied on *United States v. Lomas,* 30 F.3d 1191 (9th Cir.1994), a case which we distinguished in *Garcia–Olmedo* because, in the latter case, the government gave notice to the defendant that it was relying on a previous state court conviction to establish an aggravated felony. 112 F.3d at 401 n. 2 (citing *Lomas,* 30 F.3d at 1194 n. 2) The government clearly gave such notice to Zarate–Martinez in the indictment. ER at 3 (Zarate–Martinez' "deportation was subsequent to a conviction for the commission of an aggravated felony, that is, *a second con-*

*viction* for possession of cocaine.") (emphasis added). Because Zarate–Martinez' August 1993 conviction was an aggravated felony, the district court erred when it dismissed the portion of the indictment alleging an aggravated felony. Accordingly, we vacate the conviction and remand to the district court with instructions to reinstate the indictment under § 1326(b)(2). Zarate–Martinez will be permitted to plead anew to the reinstated indictment.

AFFIRMED as to the appeal of Zarate–Martinez. As to the government's cross appeal, the judgment and sentence are VACATED and the proceedings REMANDED in accordance with the foregoing.