**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ricardo AHUMADA–AGUILAR, aka Ricardo Ahumada; aka Ricardo Aguilar; aka Ricardo Alfonso Hernandez, Defendant–Appellant.**

**No. 96–30065.**

United States Court of Appeals, Ninth Circuit.

Filed July 1, 2002.

Donald M. Reno, Jr., Assistant United States Attorney, United States Department of Justice, Civil Division, Seattle, Washington, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, ALARCÓN, and KLEINFELD, Circuit Judges.

Opinion by Judge ALARCÓN; Dissent by Judge KLEINFELD.

ALARCÓN, Circuit Judge.

Ricardo Ahumada–Aguilar appeals from his conviction pursuant to 8 U.S.C. § 1326(a) and (b) of two counts of reentering the United States, without the consent of the Attorney General, after being deported as an alien following his conviction in a state court of the crimes of residential burglary and possession of cocaine. We reverse the judgment of conviction because we conclude that the Government failed to demonstrate that the underlying deportation proceedings were conducted in conformity with due process.

I

Ahumada–Aguilar was indicted on June 7, 1995. On August 24, 1995, he filed separate motions to dismiss the indictment. In one motion, he requested dismissal on the basis that he is not subject to prosecution for a violation of § 1326(a) and (b)(1) because he is not an alien. Ahumada–Aguilar alleged that at the time of his birth in Mexico to a Mexican citizen mother, his father was a United States citizen. He argued that he met all of the valid constitutional requirements for citizenship set forth in 8 U.S.C. § 1401(g) for a person born out of wedlock whose father is a United States citizen. He also asserted that the requirements of 8 U.S.C. § 1409(a)(3) and (a)(4) that are applicable solely to children born out of wedlock to United States citizen fathers are unconstitutional as a denial of equal protection of the law.

In the second motion, Ahumada–Aguilar argued that the indictment should be dismissed because he was deprived of his right to due process at his November 18, 1991 deportation proceedings. He asserted the following procedural errors: (1) he was not notified he had a right to contact and communicate with the Mexican Embassy; (2) he was not notified of the exact nature of the deportation charges against him until the day of the order to show cause hearing; (3) he was not adequately informed of his right to counsel and the availability of legal services; (4) he did not competently waive that right; (5) he was not adequately informed of the opportunity to seek appellate review of the deportation order; (6) nor did he knowingly and intelligently waive that right.

The district court denied both motions. After a bench trial on stipulated facts, the district court found Ahumada–Aguilar

guilty of two counts of illegally reentering the United States.

In response to Ahumada–Aguilar's appeal from the judgment of conviction, a panel of this court consisting of Judges Alarcón, Norris, and Kleinfeld affirmed the district court's judgment of conviction in an unpublished disposition. Judge Norris dissented. He concluded that Ahumada–Aguilar was denied due process at his deportation proceedings because the immigration judge ("IJ") did not obtain a knowing, voluntary, and intelligent waiver of his right to counsel, and did not elicit a valid waiver of his right to appeal.

Consideration of Ahumada–Aguilar's petition for rehearing with suggestion for rehearing en banc was withdrawn pending simultaneous briefing regarding the impact on his equal protection contention of the Supreme Court's decision in *Miller v. Albright*, 523 U.S. 420, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998), wherein the petitioner raised a similar constitutional attack on § 1409(a)(3) and (a)(4). Because of Judge Norris's retirement from this court, Judge Schroeder was drawn to take his place on the panel. On October 8, 1998, the reconstituted panel withdrew the memorandum disposition and the dissent. In our second opinion in this matter, we reversed the judgment of conviction. *United States v. Ahumada–Aguilar*, 189 F.3d 1121 (9th Cir.1999). The majority held that § 1409(a)(3) and (a)(4) deprives a United States citizen of equal protection of the law. *Id.* at 1125–27. Judge Kleinfeld dissented. Because we resolved the equal protection claims in Ahumada–Aguilar's favor, we did not consider his contention that the underlying deportation order was invalid because of the deprivation of his procedural rights.

On June 18, 2001, the Supreme Court vacated our judgment and remanded this matter for further consideration in light of *Nguyen v. INS,* 533 U.S. 53, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001). The petitioner in *Nguyen,* like Ahumada–Aguilar, was born out of wedlock to a foreign citizen mother and a United States citizen father. *Id.* at 57, 121 S.Ct. 2053. Nguyen argued that § 1409(a) "violates equal protection by providing different rules for attainment of citizenship by children born abroad and out of wedlock depending upon whether the one parent with American citizenship is the mother or the father." *Id.* at 58, 121 S.Ct. 2053. The Court held in *Nguyen* that " § 1409(a) is consistent with the constitutional guarantee of equal protection." *Id.* at 58–59, 121 S.Ct. 2053. Since precisely the same challenge to § 1409(a) has been presented by Ahumada–Aguilar in asserting that he is a United States citizen, we must reject his equal protection challenge to the same statute.

II

 Because the Supreme Court has instructed us that § 1409(a) is constitutional, we must now turn to the remaining issues in Ahumada–Aguilar's challenge to the judgment of conviction. Ahumada–Aguilar contends that we must reverse his conviction because the IJ deprived him of his right to due process at the deportation proceedings by failing to require him to state individually whether he desired to be represented by counsel at no expense to the Government. He also argues that his waiver of his right to appeal was invalid because it was not knowing and intelligent.

> Depriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense.

*United States v. Mendoza–Lopez*, 481 U.S. 828, 839, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987).

■ In *United States v. Proa–Tovar*, 975 F.2d 592 (9th Cir.1992), we held that "[a] defendant who seeks to exclude evidence of a deportation order in a prosecution under 8 U.S.C. § 1326 must do more than demonstrate deprivation of the right to a direct appeal from that order. The defendant also bears the burden of proving prejudice." *Id.* at 595. A collateral attack on an underlying deportation hearing presents a mixed question of law and fact which we review *de novo*. *Id.* at 594.

### A.

■ Congress expressly provided that an alien has the right to representation by counsel at no expense to the Government in 8 U.S.C. § 1362. "Failure to accord an alien this right may, in the light of the entire administrative record, be an abuse of discretion, requiring remand. If the prejudice to the alien is sufficiently great, there may indeed be a denial of due process itself." *Castro–O'Ryan v. INS*, 847 F.2d 1307, 1312–13 (9th Cir.1988). At the time of Ahumada–Aguilar's deportation proceedings, § 1362 read as follows:

> In any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings as he shall choose.

8 U.S.C. § 1362 (1991).

The Attorney General promulgated 8 C.F.R. § 242.16(a) to implement § 1362. At the time of Ahumada–Aguilar's deportation proceedings, § 242.16(a) provided in pertinent part:

> The Immigration Judge shall advise the respondent of his right to representation, at no expense to the Government, by counsel of his own choice authorized to practice in the proceedings and require him to state then and there whether he desires representation; [and] advise the respondent of the availability of free legal services programs ... in the district where the deportation hearing is being held[.]

8 C.F.R. § 242.16(a) (1991) (*removed and reserved* 62 Fed.Reg. 10312, 10382 (Mar. 7, 1997)).

Before the district court, the prosecutor in Ahumada–Aguilar's criminal reentry proceedings argued that "under present Ninth Circuit case law, there was a procedural defect in the deportation hearing resulting from the failure of the IJ to individually address the defendant regarding the right to counsel." The district court agreed. The district court stated: "No individual colloquy took place. Clearly there has been—was a violation of the regulation and procedure." Notwithstanding this finding, the district court ruled that Ahumada–Aguilar "implicitly waived his rights even though he remained silent and didn't expressly say he did or did not want an attorney." The record of the deportation proceedings does not support this finding. Furthermore, acceptance of an implicit waiver of the right to counsel is unequivocally inconsistent with the duty of an IJ to "require the respondent to state then and there whether he requires representation." 8 C.F.R. § 242.16(a) (1991).

The IJ conducted a group deportation proceeding on November 18, 1991, including Ahumada–Aguilar and at least three other respondents. The portion of the transcript that sets forth the IJ's advice regarding the right to counsel reads as follows.

JJ: Now gentlemen you have the right to be represented by an attorney in these proceedings.[1]

UNK: [Spanish].

CA: I don't remember if I have it.

JJ: All right now you've got it.

\* \* Group speaking \* \*

CA: Thank you.

JJ: Now gentlemen you have the right to be represented by an attorney in these proceedings.

CA: Spanish.

JJ: If you tell me you need more time in which to get a lawyer I will give you more time.

CA: Spanish.

JJ: If you tell me you want to proceed right now and speak for yourselves you can do that.

CA: Spanish.

JJ: Those of you who want to proceed right now and speak for yourselves please stand up.

CA: Spanish.

UNK: Spanish.

CA: What do you mean, speak?

JJ: (Sigh) That you're ready to proceed, ready to go forward with your case right now.

CA: Spanish.

\* \* Several speaking in Spanish \* \*

CA: No, but like, I . . .

JJ: Gentlemen, listen to what I am saying.

CA: Spanish.

JJ: Now, I have told you that if you want more time to get a lawyer I will give you more time.

CA: Spanish.

JJ: But if you want to proceed right now and speak for yourselves, proceed with your case right now, I want you to stand up and raise your right hand.

CA: Spanish.

JJ: What do you want to do?

CA: Spanish.

UNK: Spanish.

CA: Me?

JJ: Yes.

CA: Si.

UNK: Spanish.

CA: Well this is the first time I'm being deported.

·UNK: Spanish.

UNK: Spanish.

UNK: Spanish.

CA: No. I don't want a lawyer.

JJ: Ah, then stand and raise your right hand.

CA: Spanish.

JJ: Do you solemnly promise to tell the truth in the testimony you give before this court this morning?

CA: Spanish.

\* \* Several in Spanish: Si. \* \*

CA: Yes by all four.

JJ: Thank you. Please be seated.

This transcript reflects that an unidentified respondent stated: "No, I don't want a lawyer." The record is silent regarding whether Ahumada–Aguilar and the other respondents who remained silent knowingly and voluntarily waived their right to counsel. Instead of inquiring of each respondent whether to state that he wished to be represented by counsel, the IJ told the group that if they wished "to proceed right now and speak for yourselves please stand up." When one of the respondents asked what the IJ meant by "speak," the IJ responded that it meant that the re-

---

1. The transcription of the deportation hearing identified Judge Kenneth Josephsen as "JJ", the interpreter, Cynthia Adams, as "CA", and unknown respondents as "UNK."

spondent was "ready to proceed, ready to go forward with your case right now." The court did not explain that by standing up, the court would conclude that the respondent was knowingly and voluntarily waiving the right to be represented by counsel.

We have no way of determining from the transcript of the deportation proceedings which of the respondents stood up and raised their right hands. The record shows that when the IJ administered the oath, the interpreter advised the court that each of the aliens had stated that he would testify truthfully.

We can infer three possible reasons from this murky record why one or more of the aliens stood up and raised his right hand: (1) He wanted the deportation hearing to proceed without any further delay; (2) He wanted to waive his right to counsel; or (3) He stood up and raised his right hand as requested so that the court could administer the oath. None of these possibilities demonstrates that the IJ complied with the requirement of § 242.16(a) that the respondent be asked to state whether he wished to be represented by counsel.

We have previously held that problems can result from the practice of conducting group deportation proceedings in determining whether an IJ elicited a waiver of the right to appeal. In *United States v. Lopez–Vasquez*, 1 F.3d 751 (9th Cir.1993), we held that "mass silent waiver impermissibly 'presume[s] acquiescence' in the loss of the right to appeal and fails to overcome the 'presumption against waiver.'" *Id.* at 755. In *Lopez–Vasquez*, as here, the IJ did not ask each member of the group whether he wished to waive his rights. *Id.* at 752. Instead, the IJ asked anyone who wanted to appeal to stand up so that he could discuss it with them further. *Id.* at 753.

We held in *Lopez–Vasquez* that this "mass silent waiver" procedure failed to elicit a "considered and intelligent" waiver of the right to appeal and thus violated the due process rights of the petitioner. *Id.* at 754–55. We explained that "[m]ass silent waiver creates a risk that individual detainees will feel coerced by the silence of their fellows" and that asking individuals who wish to appeal to stand for further questioning "tended to stigmatize detainees who wished to appeal and to convey a message that appeal was disfavored and contingent upon further discussion with the immigration judge." *Id.* at 754.

More recently, in *United States v. Zarate–Martinez*, 133 F.3d 1194 (9th Cir. 1998), we found a due process violation in the IJ's failure to elicit a valid waiver of the right to appeal in a group deportation hearing. The proceedings in *Zarate–Martinez* are almost identical to those used to secure Ahumada–Aguilar's waiver of his right to counsel. In *Zarate–Martinez*, the IJ explained the right of appeal to a group of twenty-two detainees. *Id.* at 1197. The IJ then asked: "You all understand that you will have the right to appeal." *Id.* The interpreter responded: "Everyone answers yes." *Id.* Then the IJ stated, "If any of you wants to fight its (sic) case to try to stay in the United States, please raise your hand." *Id.* at 1198. Unlike Ahumada–Aguilar's hearing, the IJ later addressed Zarate–Martinez directly, asking "Do you understand your rights?" *Id.* The petitioner responded "Yes" and when asked if there was anything else he would like to say, he replied "No." *Id.* We held in *Zarate–Martinez* that this response did not constitute a voluntary and intelligent waiver of the right to appeal. *Id.*

We cannot discern a principled reason to hold that group silence does not demonstrate a knowing and intelligent waiver of the right to appeal, but is sufficient to

satisfy the requirement of § 242.16(a) that the IJ require each respondent to "state then and there whether he desires representation." We are persuaded that the IJ deprived Ahumada–Aguilar of his statutory right to be represented by counsel at his deportation hearing.

## B.

■ Ahumada–Aguilar also argues that the deportation hearing was procedurally flawed because the waiver of his right to appeal was unknowing and involuntary. During the deportation hearing Ahumada–Aguilar repeatedly stated his desire for a "second chance" and expressed confusion over the consequences of a deportation. Ahumada–Aguilar asked the IJ whether he could return to the United States and regain his lawful permanent residence if he were deported. The IJ replied: "Well, I don't want to speak for the future, *you can ask special permission to come back into the United States* but I can't tell you if you will or will not get it, that'll be something you'll have to deal with later." (emphasis added).

The IJ's advice to Ahumada–Aguilar that he could ask special permission to return to the United States was erroneous. Aliens who have been convicted of a violation of the law relating to a controlled substance are ineligible to receive a visa to enter the United States. 8 U.S.C. § 1182(a)(2)(A)(i)(II) (1991).[2] After hearing the IJ's erroneous interpretation of the consequences that will result from the deportation of a person convicted of possession of cocaine, Ahumada–Aguilar waived his right to appeal the deportation order. We agree with Ahumada–Aguilar that a waiver of the right to appeal based on an IJ's erroneous interpretation of the impact on a respondent's right of lawful reentry into the United States is not knowing and intelligent.

## III

■ We must now consider whether these due process deprivations were prejudicial. Procedural flaws alone do not invalidate a deportation hearing. *Proa–Tovar*, 975 F.2d at 595. It remains unsettled in this circuit whether a showing of prejudice must be made where the right to counsel has effectively been denied a respondent in a deportation hearing. *See Baires v. INS*, 856 F.2d 89, 91 n. 3 (9th Cir.1988); *Colindres–Aguilar v. INS*, 819 F.2d 259, 262 (9th Cir.1987) (*citing Rios–Berrios v. INS*, 776 F.2d 859, 863 (9th Cir.1985)). Once again, we leave that issue for another day because it is clear from the record that the denial of counsel was prejudicial to Ahumada–Aguilar. Despite conceding that the IJ violated § 242.16(a) by failing to require Ahumada–Aguilar to state whether he wished to be represented by counsel in the deportation hearing, the prosecutor in Ahumada–Aguilar's criminal reentry proceedings argued that "the defendant was not prejudiced by the failure of the IJ to follow the precise formality of this procedural requirement as there were no factors available at the time of the hearing that could have prevented the defendant's deportation." We disagree.

"With only a small degree of hyperbole, the immigration laws have been termed 'second only to the Internal Revenue Code in complexity.' A lawyer is often the only

---

2. 8 U.S.C. § 1182(a)(2)(A)(i)(II) (1991) states: Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a violation of (or a conspiracy to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21) is excludable.

person who could thread the labyrinth." *Castro–O'Ryan*, 847 F.2d at 1312 (internal citation omitted). A competent attorney would have informed Ahumada–Aguilar that he should not concede deportability because he was arguably a United States citizen. The third-party equal protection challenge Ahumada–Aguilar raised in the criminal reentry proceedings presented an as yet unresolved constitutional question. The fact that the issue was subsequently clearly decided by the Supreme Court against Ahumada–Aguilar's position, in *Nguyen, supra,* in no way diminishes the ripeness of the issue at the time of his deportation hearing.

At the time of Ahumada–Aguilar's deportation proceedings, an alien was eligible for a discretionary waiver of deportation after legally residing in the country for seven consecutive years. 8 U.S.C. § 1182(c) (1991).[3] An alien continued to accrue legal residency time for the purpose of this discretionary waiver while pursuing an appeal of his deportation order. *See Foroughi v. INS,* 60 F.3d 570, 572 (9th Cir.1995) (holding that, pursuant to a Board of Immigration Appeals decision, an alien's lawful residency in the United States continued to accrue until the disposition of his petition for judicial review contesting the merits of his deportation). The IJ incorrectly concluded that Ahumada–Aguilar had "only had his green card for five years." In fact, at the time of the deportation hearing, Ahumada–Aguilar had held his green card for approximately six years and two months, leaving him just

ten months shy of being eligible for a discretionary waiver of deportation. While it may not be the duty of the IJ to inform a respondent that he may become eligible for a waiver of deportation during the substantial time required to pursue an appeal from the deportation order, *cf. United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir.2000) (holding that pro se alien's waiver of the right to appeal his deportation order was invalid where the IJ failed to inform him about his eligibility for relief from deportation), a competent attorney would have recognized the IJ's failure to calculate accurately the length of Ahumada–Aguilar's total residence in the United States. A competent attorney would have urged him to press an appeal in order to accrue the final ten months necessary for him to qualify for a discretionary waiver of deportation. In this context, an appellant need not prove that he would have been granted a discretionary waiver, but only that he had plausible grounds for relief. *See, e.g., United States v. Jimenez–Marmolejo,* 104 F.3d 1083, 1086 (9th Cir.1996) (holding that an alien who had lived in the United States since age three, who was borderline retarded, and who's family lived in the United States had shown plausible grounds for discretionary relief from deportation). The district court found that had Ahumada–Aguilar accumulated the seven years necessary to apply for a discretionary waiver during an appeal of the deportation proceedings, he "would have had a reasonable chance,

---

3. 8 U.S.C. § 1182(c) (1991) provides:
 Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) [listing the classes of excludable aliens].

"Although the literal language of [§ 1182(c)] applies only to exclusion proceedings, the statute has been held to apply to deportation proceedings as well." *United States v. Jimenez–Marmolejo,* 104 F.3d 1083, 1085 n. 1 (9th Cir.1996) (*citing Ortega de Robles v. INS,* 58 F.3d 1355, 1358 (9th Cir.1995)).

in fact a very good chance to get the relief he needed to stay in the United States." We agree.

Lastly, a competent attorney would have advised Ahumada–Aguilar that if he was deported as a felon, he could not be granted special permission to return to the United States to be reunited with his family, contrary to the statement made by the IJ. Advice from a competent attorney would have prevented Ahumada–Aguilar from making an unknowing and involuntary waiver of his right to appeal based on misinformation.

## CONCLUSION

The IJ's failure to address Ahumada–Aguilar individually in order to obtain an express statement that he wished to waive his right to counsel knowingly and intelligently, and the IJ's erroneous statement of law regarding Ahumada–Aguilar's waiver of his right to appeal violated his right of due process. With the assistance of counsel, Ahumada–Aguilar would have had the opportunity to present evidence that he was entitled to relief from deportation after he had exhausted an appeal from the deportation order. Thus, he was prejudiced by these due process violations. We hold that the 1991 deportation order may not be used to support his conviction for illegal reentry. The judgment of conviction is REVERSED.

KLEINFELD, Circuit Judge, dissenting:

This is a criminal case for reentry after deportation, not direct review of the deportation.[1] Ahumada–Aguilar has won this case before on the theory that maybe he wasn't an alien at all.[2] The Supreme Court vacated.[3] Now he wins again. And again, his victory isn't based on any question about whether he reentered following deportation, but on the theory that his deportation proceeding was defective. And again,[4] we err. The collateral issue on which Ahumada–Aguilar gains relief under today's majority opinion is that his waiver of counsel was defective under our previous decisions. But today's decision doesn't follow our precedents; rather, it expands and extends them far beyond their already extended reach.

### 1. Procedural Defect

The issue here is whether Ahumada–Aguilar, in his deportation hearing, waived his right to counsel. Deportation isn't criminal, so we are not talking about the Sixth Amendment right to counsel. Rather, the right to counsel at issue is the one codified in the applicable statute and INS regulations.[5] Under the regulation, the Immigration Judge had to "require him to state then and there whether he desires representation."[6] The IJ did just that. He carefully explained the right to representation, saw to it that the four people before him knew that they had a right to free lawyers, and gave them a list of the names of such lawyers. Ahumada–Aguilar was given a form in Spanish and English explaining his right, and advised that he could be helped to obtain a free lawyer if he couldn't afford to hire one.

1. *See* Majority at 945.

2. *United States v. Ahumada–Aguilar,* 189 F.3d 1121 (9th Cir.1999) (*"Ahumada I "*).

3. *United States v. Ahumada–Aguilar,* 533 U.S. 913, 121 S.Ct. 2518, 150 L.Ed.2d 691 (2001) (*"Ahumada II "*).

4. *See Ahumada I,* 189 F.3d at 1127 (Kleinfeld, J., dissenting).

5. *See* 8 U.S.C. § 1362 (1991); *see also* 8 C.F.R. § 242.16(a).

6. 8 C.F.R. § 242.16(a).

Then the Immigration Judge, in the context of discussing the right to representation by a lawyer, said that anyone who didn't want the continuance to obtain counsel that the judge had offered, and instead wanted to proceed immediately and waive counsel, should stand up and raise his hand. The IJ told them that "[t]hose of you who want to proceed right now and speak for yourselves [should] please stand up." After being asked for clarification by one of the detainees, the IJ answered, "I have told you that if you want more time to get a lawyer I will give you more time .... But if you want to proceed right now and speak for yourselves, proceed with your case right now, I want you to stand up and raise your right hand." Ahumada–Aguilar stood up and raised his hand. The record is perfectly clear on that. Had there been any ambiguity about whether Ahumada–Aguilar preferred to take advantage of the judge's offer of a continuance to obtain counsel, or to waive counsel and proceed immediately, it would be fully cleared up by Ahumada–Aguilar's statement when the judge conducted his individualized colloquy following the group procedure. When the judge explained that Ahumada–Aguilar could appeal his decision, Ahumada–Aguilar said, "I just want to get it over with."

The deportation hearing was conducted in English and Spanish. Ahumada–Aguilar had lived in the United States most of his life and was fluent in both languages. Most of the difficulty in reading the hearing transcript is not because it was inherently confusing to the participants, but because it is hard to read a transcript where the proceedings are translated, and initials are used to refer to the interpreter when the interpreter states in English what was just said in Spanish.

The majority says the IJ's procedure was so defective as to constitute a denial of the constitutional right to due process, under *United States v. Lopez–Vasquez*,[7] *United States v. Ortiz–Rivera,*[8] and *United States v. Zarate–Martinez.*[9] But those cases are distinguishable. In all three, the alien had to stand up to *assert* the right. In *Lopez–Vasquez*, we held that "mass waiver by silence made it impossible to determine whether [the alien] made a voluntary and intelligent decision," because "individual detainees will feel coerced by the silence of their fellows" and directing that someone who wants to assert a right "must stand up ... tended to stigmatize."[10] In *Ortiz–Rivera,* we held that making an alien stand up if he wanted to preserve his right to appeal was inadequate under *Lopez–Vasquez.*[11] Likewise in *Zarate–Martinez* we held, following *Lopez–Vasquez,* that making an alien raise his hand to *assert* his right was "indistinguishable from the silent waiver we condemned in *Lopez–Vasquez.*"[12]

But in this case, Ahumada–Aguilar didn't have to stand up or raise his hand to *assert* or *retain* a right. There wasn't any "silent waiver" in the sense that we condemned it in those cases. In all three of those cases, if an alien, through social pressure, shyness, or inattention, sat and did nothing, his right disappeared. But in the case at bar, if Ahumada–Aguilar sat and did nothing, his right was *retained.* In order to waive his right, Ahumada–Aguilar had to do what we said was too

7. 1 F.3d 751 (9th Cir.1993).

8. 1 F.3d 763 (9th Cir.1993).

9. 133 F.3d 1194 (9th Cir.1998).

10. *Lopez–Vasquez*, 1 F.3d at 754.

11. *Ortiz–Rivera,* 1 F.3d at 768.

12. *Zarate–Martinez,* 133 F.3d at 1198.

much to ask in those three cases: he had to stand up and also raise his hand. Since it is much more conventional to do one or the other but not both, it is hard to imagine anyone standing up and simultaneously raising his hand unless he really meant to. You don't stand up and raise your hand through shyness, inattention, or discomfort with an unfamiliar situation.

Moreover, it isn't the silence, as such, that makes the waiver bad in *Lopez–Vasquez:* it's the ambiguity. It's hard to tell if someone sitting and doing nothing really means to do something, namely to waive a right. In this case, Ahumada–Aguilar's act of standing and raising his hand made his active choice clear. In deliberative bodies, standing up is used as a means of avoiding possible ambiguity that may arise from oral expression. Robert's Rules says that if any member of a deliberative body doubts a vote, a "division" is called for, and the chairman should first ask those in favor of the motion to rise, and then those opposed to rise, in order to be accurately counted.[13] The physical movement is used as an especially plain and express statement.

### 2. Prejudice

The majority's prejudice analysis is also mistaken. The majority says that a competent lawyer would have asserted that Ahumada–Aguilar was a citizen. I don't think that contention at any time had merit, and I dissented when a majority of this panel previously said it did.[14] The Supreme Court vacated that previous majority decision.[15] As a matter of law, there cannot be cognizable prejudice arising out of failure to assert a legally erroneous position.[16]

The majority says that a competent lawyer would have pressed an appeal merely for purposes of delay, so that Ahumada–Aguilar could stretch his residency to five years. That is a troubling notion of competence. An ethical lawyer does not file papers in order to cause unnecessary delay.[17]

The majority's last point on prejudice is that a lawyer would have warned Ahumada–Aguilar against waiving his right to fight deportation, because he wouldn't be able to get back in. That assumes too much. First, because his previous convictions for possession of cocaine and residential burglary would have weighed heavily against a discretionary waiver of deportation under 8 U.S.C. § 1182(c) (1991), his likelihood of getting this relief wouldn't be high enough to sacrifice any other concerns Ahumada–Aguilar might have had about remaining in custody. Second, although no lawyer could suggest it, he could get back in despite deportation by sneaking in, which is just what he did at least seven times. And third, most importantly, criminals waive their rights and accept

13. *Robert's Rules of Order* § 38 (1982).

14. *Ahumada I,* 189 F.3d at 1127 (Kleinfeld, J., dissenting).

15. *Ahumada II,* 533 U.S. at 913, 121 S.Ct. 2518.

16. *Williams v. Taylor,* 529 U.S. 362, 392, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[G]iven the overriding interest in fundamental fairness, the likelihood of an outcome attributable to an incorrect interpretation of the law should be regarded as a potential 'windfall' to the defendant rather than ... legitimate 'prejudice'.").

17. *See, for example,* Fed.R.Civ.P. 11(b)(1) ("By presenting [papers] to the court.., an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—(1) it is not being presented for any improper purpose, such as to ... cause unnecessary delay."); *see also* Wash. R.P.C. §§ 1.3, 3.2 (1985).

immediate deportation all the time, because a bus ride out of the United States to immediate freedom is a lot better than sitting for weeks or months in detention pending deportation proceedings. A waiver is often intelligent and knowing for this reason. We can never know what Ahumada–Aguilar knew and what his attorney might have known about why it might be in his interest to get deported immediately rather than staying in jail in the United States. A competent and ethical lawyer might very well have advised Ahumada–Aguilar to do just what he did, and there isn't any showing of prejudice.

Because the IJ in this case did not violate Ahumada–Aguilar's right to due process and because, even if he had, there was no prejudice, I dissent.

No. 00–17473.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 2002.

Filed July 1, 2002.