**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　　　v.

RAUL BECERRIL-LOPEZ,
　　　　　*Defendant-Appellant.*

No. 05-50979

D.C. No.
CR-05-01367-MLH

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
REHEARING EN
BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued November 14, 2006
Submitted June 5, 2008
Pasadena, California

Filed June 12, 2008
Amended August 29, 2008

Before: Harry Pregerson, Cynthia Holcomb Hall, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hall

11911

## COUNSEL

Stephanie J. Lacambra, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Matthew J. Gardner and Mark R. Rehe, Assistant United States Attorneys, San Diego, California, for the plaintiff-appellee.

## ORDER

The opinion filed on June 12, 2008, is amended as follows. On slip opinion page 6718, footnote 2, the following language shall be added:

> We express no opinion as to the result if Becerril's prior deportation were governed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1997, which provided in part that "[t]he Attorney General may permit an alien voluntarily to depart . . . in lieu of being subject to proceedings under section 1229a of this title or prior to the completion of such proceedings, if the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) of this title." 8 U.S.C. § 1229c(a)(1) (1997); *see also United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004).

With this amendment, the panel has voted to deny appellant's petition for panel rehearing and has recommended denial of the petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are DENIED.

No further petitions for rehearing will be entertained.

## OPINION

HALL, Circuit Judge:

Raul Becerril-Lopez ("Becerril") appeals his jury conviction and sentence for being a deported alien found in the United States in violation of 8 U.S.C. § 1326. Among other claims, he argues that his prior conviction under California Penal Code § 211 does not qualify as a "crime of violence" under the sentence enhancement provision for illegal re-entry crimes. We hold that it does, and we affirm.

### I.   Background

Becerril was apprehended just north of the border near San Ysidro on July 4, 2005. Because he had previously been deported in 1995, Becerril was subsequently indicted on charges of being a deported alien found in the United States in violation of 8 U.S.C. § 1326(a). He was convicted on this sole count after a jury trial.

At the sentencing hearing on December 12, 2005, the district court found that Becerril had a base offense level of 8 and imposed a 16-level enhancement under Sentencing Guidelines § 2L1.2(b) on the basis of a 1986 conviction for robbery under California Penal Code § 211. *See* 8 U.S.C. § 1326(b). He was sentenced to 100 months in prison (which was the low end of the applicable Guidelines range) and three years of supervised release. Becerril filed a timely notice of appeal.

### II.   The Conviction

#### A.   *The Motion to Dismiss the Indictment*

Becerril first argues that the district court should have dismissed the indictment because he was denied due process at

the master calendar hearing preceding his 1995 deportation. We review de novo the district court's denial of Becerril's motion to dismiss on these grounds. *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001).

**[1]** The Due Process Clause requires a meaningful opportunity for judicial review of the underlying deportation in a § 1326 prosecution. *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998). To succeed in a collateral attack on an earlier deportation, a defendant must show (1) that he exhausted his administrative remedies to appeal his removal order; (2) that the underlying removal proceedings deprived him of the opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004). A deportation order is fundamentally unfair if the defendant's due process rights were violated by defects in the underlying deportation proceeding, and the defendant suffered prejudice as a result of the defects. *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).

At the master calendar hearing, the Immigration Judge asked whether anyone had family members who were permanent residents or citizens of the United States, for the purposes of granting relief under § 212(h) of the Immigration and Naturalization Act. The IJ also asked each person individually whether he wanted to seek an appeal. The judge did not advise the group of the possibility of voluntary departure because he had found that each person had a prior criminal conviction. Becerril did not mention his family members in the United States and did not indicate any intent to appeal his case. Now, he argues that he was entitled to relief under § 212(h), as well as voluntary departure, withdrawal of his application, and an appeal. Therefore, he argues that he suffered prejudice due to alleged defects in the way the hearing was conducted.

### 1.   212(h) Relief

**[2]** Becerril argues that he would have been eligible for relief under § 212(h), and that the judge did not advise him of this option. Under § 212(h), the Attorney General may waive removal if deportation would cause "extreme hardship" to relatives of the alien who are U.S. citizens or permanent legal residents. 8 U.S.C. § 1182(h)(1)(B) (1995). At Becerril's hearing, conducted in group format, the IJ asked whether anyone had close relatives who were permanent residents or citizens. After engaging in a colloquy with one person, the IJ asked in Spanish whether anyone else ("Alguien más?") qualified. Becerril claims that the IJ "sped through his general advisal," and moved on from question to question without waiting for the translator. The record does not support this assertion. While the IJ did not wait for the translator at certain moments, these instances occurred only when the IJ had made a statement, not asked a question.

**[3]** Even if the colloquy here was procedurally deficient in some way, Becerril must still show that he had "plausible grounds" for relief under this provision. *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998). To demonstrate the "extreme hardship" required by the statute, the defendant must show that the consequences of his being removed would go beyond "the common results of deportation," such as a loss of financial support for relatives in the United States. *Id.* at 564 (citing *Shooshtary v. INS*, 39 F.3d 1049 (9th Cir. 1994)). We will find prejudice only after a clear, detailed demonstration that the defendant provided "non-economic familial support" or "something more" than financial support. *Arrieta*, 224 F.3d at 1082. Becerril's brief presents only a few abstract claims about financial support for his son, a U.S. citizen, and his father, a legal resident of the United States. We hold that he has failed to demonstrate any prejudice here.

## 2.   Voluntary Departure

**[4]** Becerril claims that he was entitled to be advised of what he calls "pre-conclusion" voluntary departure under § 242 of the INA, codified at 8 U.S.C. § 1252(b) (1995).[1] As it existed in 1995, this provision gave the Attorney General discretion to waive deportation hearings for aliens who depart voluntarily "in lieu of *initiating* deportation proceedings." *Contreras-Aragon v. INS*, 852 F.2d 1088, 1094 (9th Cir. 1988) (emphasis in original). The Supreme Court has noted that, under the statute at the time, "[a]rrested aliens [were] almost always offered the choice of departing the country voluntarily, . . . and as many as 98% of them [took] that course." *Reno v. Flo-res*, 507 U.S. 292, 307 (1993).[2]

---

[1] That statute provided: "In the discretion of the Attorney General, . . . deportation proceedings . . . need not be required in the case of any alien who admits to belonging to a class of aliens who are deportable . . . if such alien voluntarily departs from the United States at his own expense, or is removed at Government expense as hereinafter authorized, unless the Attorney General has reason to believe that such alien is deportable under paragraphs (2), (3) or (4) of section 1251(a) of this title." 8 U.S.C. § 1252(b) (1994).

[2] Voluntary departure might also have been available after the deportation proceedings under INA § 244, 8 U.S.C. § 1254(e) (1994). *See Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 827 (9th Cir. 2003). Becerril does not contend he should have been advised of this possibility, however. The "pre-conclusion" departure Becerril describes, which appears in INA § 242, would have been granted before the master calendar hearing and will be referred to as "pre-hearing" voluntary departure.

We express no opinion as to the result if Becerril's prior deportation were governed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1997, which provided in part that "[t]he Attorney General may permit an alien voluntarily to depart . . . in lieu of being subject to proceedings under section 1229a of this title or prior to the completion of such proceedings, if the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) of this title." 8 U.S.C. § 1229c(a)(1) (1997); *see also United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004).

**[5]** The Attorney General was not required, however, to grant this form of relief automatically to aliens who were eligible. *See Perales v. Casillas*, 903 F.2d 1043, 1050 (5th Cir. 1990) (holding that the "permissive" language of the statute and implementing regulations gave the Attorney General "unfettered" discretion to grant or deny pre-hearing voluntary departure). Because pre-hearing voluntary departure would have been granted, if at all, before the hearing, we cannot hold that the IJ violated Becerril's rights by failing to mention it at the hearing itself.[3]

### 3.   Withdrawal of Application for Admission

Becerril argues that he was an "applicant for admission" to the United States and should have been informed of his right to withdraw his application and leave the country under 8 U.S.C. § 1101(a)(4). Becerril offers no cases, statutes or regulations to support the claim that he was an "applicant for admission," and we decline to endorse it.

### 4.   Right to Appeal

**[6]** Finally, Becerril argues that his deportation was invalid because he did not properly waive his right to appeal. He analogizes his case to *United States v. Zarate-Martinez*, 133 F.3d 1194 (9th Cir. 1998), where we found that waiver was invalid because of the way the IJ conducted the group hearing. In *Zarate-Martinez*, the IJ stated, in the future tense, that every person "*will have* the right to appeal," without stating when or how. *Id.* at 1197. The IJ also told the group that anyone who wanted to appeal should raise his hand, without asking each person individually. *Id.* at 1198. In a later individual colloquy with the defendant, the IJ asked only whether Zarate

---

[3]We note that two unpublished memorandum dispositions issued prior to this decision held otherwise. *See United States v. Nungaray-Rubalcaba*, 229 Fed. App'x 436 (9th Cir. Apr. 10, 2007); *United States v. Basulto-Pulido*, 219 Fed. App'x 717 (9th Cir. Jan. 25, 2007).

understood his rights and if he had anything else to say. *Id.* This court held that Zarate's one-word responses ("yes" and "no," respectively) did not qualify as a valid waiver.

**[7]** Becerril's case is distinguishable from *Zarate-Martinez*. The IJ here did not phrase his statements about appeal in the future tense; it was clear that the time to appeal was at that hearing. He also asked each individual whether he would appeal or accept the decision as final. We find the IJ's inquiry sufficient and therefore affirm the district court's refusal to dismiss the indictment on the basis of a defective deportation proceeding.

### B. Motion to Strike Testimony of Agent Torres

Becerril next argues that the district court improperly denied his motion to strike testimony from U.S. Border Patrol Agent Rene Torres as lacking personal knowledge. Becerril argues that without Torres' testimony, nothing showed that he was free from constant surveillance and "official restraint" when he entered the country, as required under our § 1326 cases. *See United States v. Zavala-Mendez*, 411 F.3d 1116, 1119 (9th Cir. 2005) ("a person is not 'in' the United States until he is not only physically present on our side of the border, but also enjoys 'freedom from official restraint' "); *United States v. Cruz-Escoto*, 476 F.3d 1081, 1085-86 (9th Cir. 2007) ("Aliens who . . . sneak across the border in some illegitimate manner are under official restraint only if they are under constant governmental observation from the moment they set foot in this country until the moment of their arrest." (citations, quotation marks, and alterations omitted)). The district court's evidentiary decisions involving factual determinations are reviewed for abuse of discretion. *See United States v. Mateo-Mendez*, 215 F.3d 1039, 1042 (9th Cir. 2000). We reverse only if, absent the error, the jury more probably than not would have reached a different verdict. *See United States v. Ramirez*, 176 F.3d 1179, 1182 (9th Cir. 1999).

Here, the government reopened its case to examine Torres after the district court ruled that it would give an instruction on freedom from official restraint. During direct examination, Torres explained that he had been working as the night scope operator on the night of Becerril's arrest, and that he had tracked several people crossing the desert upon the suggestion of his dispatcher. Torres first saw these individuals in a canyon one-half-mile north of the border and directed another agent, Abel Rivera, to the location where he suspected they were hiding.

During cross-examination, Torres backtracked on this story. He said he was in fact not familiar with the events of that evening:

> Q: But you're saying now on this stand under oath that you specifically remember watching Mr. Becerril with your night scope on July 4th?
>
> A: I remember putting Agent Rivera in on a group and a scope. I cannot tell you who — who it is at all.
>
> Q: But you specifically remember looking through your night scope and everything that you did that night on July 4th?
>
> A: Not particularly, ma'am.

Torres then testified that he had prepared for testimony by reading a report produced by Agent Rivera.

> Q: And based on Agent Rivera's report, that's what you're relying on for your testimony here today?
>
> A: Yes, ma'am.
>
> Q: You have no independent recollection of what happened on July 4th, 2005?

A: Other than I was the scope operator, no, ma'am,
I have no idea.

The district court denied defense counsel's motion to strike this testimony as lacking personal knowledge.

**[8]** Under the Federal Rules of Evidence, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The district court clearly abused its discretion by admitting Torres' testimony, which, in the end, amounted to reading in portions of Agent Rivera's report.

**[9]** Still, we are not persuaded that reversal is warranted. Becerril argues that the government needed Torres' testimony to establish that he was not under constant surveillance from the time he crossed the border until his capture and therefore that he entered the country free from official restraint. But Becerril ignores testimony from Agent Rivera himself, who stated that he was alerted to Becerril's presence when seismic sensors within the United States indicated people or animals were in a canyon 50 yards north of the border. According to Rivera, Torres then directed him to the area where he had "last seen" Becerril go into the canyon on his night scope, and when Rivera arrived in that area, he found Becerril hiding in the brush. This testimony indicated freedom from restraint and therefore that Becerril had been found in the United States for purposes of § 1326. *See Cruz-Escoto*, 476 F.3d at 1085-86. The evidence also establishes, that, more probably than not, the jury's verdict would have been the same absent the evidentiary error.

**[10]** The conviction must therefore be affirmed.

### III.   Sentencing

We now turn to Becerril's arguments concerning his sentence.

### A.   Section 211 Is a "Crime of Violence"

Criminal defendants like Becerril who have reentered the country after being deported are subject to a 16-level sentencing enhancement if they were previously convicted of a "crime of violence." *See* U.S.S.G. § 2L1.2. The district court applied this enhancement to Becerril's prior conviction for robbery under California Penal Code § 211. We review de novo whether this was proper, using the test set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See United States v. Cortez-Arias*, 403 F.3d 1111, 1114 & n.7 (9th Cir. 2005).

### 1.   *McDougherty* Does Not Control

Before we perform the *Taylor* analysis, we must briefly explain why the question is not controlled by our prior precedent. We have previously held that § 211 is a crime of violence under the career offender provision of the Guidelines in § 4B1.2. *See United States v. McDougherty*, 920 F.2d 569 (9th Cir. 1990). In that case, we looked at both § 4B1.2's commentary language as well as the federal definition of robbery contained in 18 U.S.C. § 16(b).[4] *McDougherty*'s legal conclusion clearly rested on the language in § 16(b), which covers any felony that involved a "substantial risk" that physical force may be used "against the person or property of another." *See id.* at 574. This definition is broader than the definition contained in § 4B1.2 alone, which identified only those crimes presenting a substantial risk of physical injury to another. Injury to property, significantly, was not mentioned.[5]

---

[4]At the time, § 4B1.2 specifically referenced the federal definition in § 16(b), but this reference was removed in the 1989 amendments to the Guidelines.

[5]We have also held that a § 211 violation is a crime of violence under 18 U.S.C. § 5032, which dictates when juvenile offenders may be transferred to adult status. *See United States v. David H.*, 29 F.3d 489, 494 (9th Cir. 1994). In that case we turned, again, to § 16(b) to supply the definition of "crime of violence." *See id.* (citing *United States v. Baker*, 10 F.3d 1374, 1393-94 (9th Cir. 1993)). The statute at issue, however, provided no definition of its own.

*McDougherty* is relevant but not controlling in this case. First, § 2L1.2 contains no reference to 18 U.S.C. § 16(b), as § 4B1.2 did. Second, as we have recently emphasized, § 4B1.2 has "materially different" wording from § 2L1.2. *United States v. Beltran-Mungia*, 489 F.3d 1042, 1049 (9th Cir. 2007). While § 4B1.2 contains a catch-all for crimes presenting a "serious potential risk of physical injury," § 2L1.2 covers only those crimes that involve "the use, attempted use, or threatened use of physical force against the person of another." As we held in *Beltran-Mungia*, a state crime that satisfies the "crime of violence" definition in § 4B1.2 does not automatically satisfy the definition in § 2L1.2. *Id.* Therefore, we approach the issue as a question of first impression.[6]

## 2. The *Taylor* Analysis

As defined in the commentary to U.S.S.G. § 2L1.2, "crime of violence" means any of the following:

> murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

To determine whether a conviction under Cal. Penal Code § 211 meets this definition, we use the *Taylor* categorical approach. We "look only to the fact of conviction and the statutory definition of the prior offense, not to the underlying facts," to determine whether the prior conviction is a qualifying offense. *United States v. Lopez-Montanez*, 421 F.3d 926,

---

[6]We issued two memorandum dispositions prior to *Beltran-Mungia* deciding the issue under *McDougherty*. *See United States v. Molina-Salas*, 210 Fed. App'x 664 (9th Cir. Dec. 11, 2006) and *United States v. Rodriguez-Nicolas*, 210 Fed. App'x 669 (9th Cir. Dec. 11, 2006).

929 (9th Cir. 2005) (internal quotation marks and citation omitted). To demonstrate that § 211 is not per se an offense within the Guideline, Becerril must show that there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of [the] crime[s]" listed in the enhancement and also outside the enhancement's "catch-all" language. *Gonzales v. Duenas-Alvarez*, 127 S.Ct. 815, 822 (2007); *see also James v. United States*, 127 S.Ct. 1586, 1591 (2007) (examining each listed crime and catch-all in 18 U.S.C. § 924(e)). Under the law of our circuit, Becerril may carry this burden by showing that the text of the state statute expressly includes a broader range of conduct than the Guideline. *See United States v. Vidal*, 504 F.3d 1072, 1082 (9th Cir. 2007) (en banc) (citing *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc)).[7]

**[11]** With this framework in mind, we turn to the state statute. Section 211 of the California Penal Code defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Fear is defined as either "[t]he fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family" or "[t]he fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery." Cal. Penal Code § 212.

Becerril argues that California's definition of robbery is overbroad in six ways: (1) it encompasses fear of injury to

---

[7]In *Duenas-Alvarez*, the defendant's argument relied not on the express text of the statute at issue, but on how state courts might conceivably apply it. The Supreme Court held that to prevail, the defendant had to show either that the statute was applied this way in his own case, or "point to . . . other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." 127 S.Ct. at 822.

property; (2) it encompasses fear of any "unlawful injury;" (3) it has no immediacy requirement; (4) it encompasses force or fear employed after the initial taking; (5) includes the taking of money by a person who honestly believes the victim owes him money; and (6) imposes liability under an overly broad theory of aiding and abetting. We consider each argument in turn.

[12] *Fear of Injury to Property / Fear of "Unlawful Injury"*: Becerril is correct that Cal. Penal Code § 211 is broader than generic robbery — one of the crimes listed in § 2L1.2 — because it encompasses takings accomplished by a broader range of threats than would the generic offense. We adopt as a generic definition of robbery the same definition adopted by the Fifth Circuit, which described the crime as "aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving immediate danger to the *person*." *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 380 (5th Cir. 2006) (quoting 3 W. LaFave, Substantive Criminal Law § 20.3(e) (2d ed. 2003) [hereinafter LaFave]) (emphasis added, internal punctuation omitted). Section 211 is broader because it encompasses mere threats to property, such as "Give me $10 or I'll key your car" or "Open the cash register or I'll tag your windows." Section 211 is not, therefore, categorically "robbery" as used in the Guideline. *See* 3 LaFave § 20.3(d)(2) & n.73 (noting that most modern statutes limit robbery to force or threats against a person). *But see United States v. Tellez-Martinez*, 517 F.3d 813, 815 (5th Cir. 2008).**[8]**

---

**[8]***Tellez-Martinez* is the only other published appellate opinion on this question. The Fifth Circuit held that even though Cal. Penal Code § 211 encompassed threats to property, it fell within the generic definition of robbery because the statute required that the crime be committed "(1) directly against the victim or in his presence; and (2) against his will." 517 F.3d at 815 (citing Cal. Penal Code § 211). The court reasoned that in light of these elements, "even when the statute is violated by placing the victim in fear of injury to property, the property has been misappropriated in cir-

**[13]** But robbery is not the only hurdle. Takings through threats to property and other threats of unlawful injury fall within generic extortion, which is also defined as a "crime of violence." U.S.S.G. § 2L1.2 cmt. 1(B)(iii). The Supreme Court has defined generic extortion as "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003) (internal quotation marks omitted). Unlike robbery, the threats that can constitute extortion under the modern statutes include threats to harm property and to cause other unlawful injuries. *See* 3 LaFave § 20.4(a)(4) & n.16 (citing statutes). Becerril cites no authority, and we find none, to suggest that the fear of "unlawful injury" punished by Cal. Penal Code § 211 is incompatible with generic extortion.

**[14]** We do not suggest that extortion is necessarily a lesser-included offense of robbery. *See People v. Torres*, 39 Cal. Rptr. 2d 103, 111-12 (Ct. App. 1995) (defendant's use of extreme physical force negated possibility that he intended to take property with the victim's consent, as required for extortion). We simply conclude that if a conviction under Cal. Penal Code § 211 involved a threat not encompassed by

---

cumstances 'involving immediate danger to the person.' " *Id.* (quoting *Santiesteban-Hernandez*, 469 F.3d at 380). We decline to rely on this reasoning. Even with the additional elements, we are unconvinced that a taking by threat to property necessarily entails dangers to the person. Perhaps contrary to the Fifth Circuit's assumption, "against the will" does not imply any force or threat of force against the person. "Against the will" in this context simply means "without consent" of the victim. Cal. Jury Instr. — Crim. 9.40; *see also* 1 B.E. Witkin & Norman L. Epstein, California Criminal Law: Defenses § 88 (3d ed. 2000) [hereinafter Witkin] ("In a prosecution for theft or robbery, proof of consent to the taking will constitute a defense."). And certainly the mere presence of the victim cannot, without more, supply the requisite danger to the person to elevate a theft to robbery. *See* 3 Witkin: Crimes Against Property § 96 ("If the taking is by a secret picking of a pocket, or by a hasty snatching of a purse without resistance, the crime is only larceny from the person.").

generic robbery, it would necessarily constitute generic extortion and therefore be a "crime of violence" under U.S.S.G. § 2L1.2. *See* 3 LaFave § 20.4(b) ("Statutory extortion (or blackmail) is, of course, closely related to the crime of robbery, having in fact been created in order to plug a loophole in the robbery law by covering sundry threats which will not do for robbery.").**[9]**

**[15]** *Immediacy*: For similar reasons, Becerril does not get far with his argument that Cal. Penal Code § 211 has no immediacy requirement. True, the statute would encompass a threat of future harm to the victim or the victim's family. *See* Cal. Penal Code § 212; *People v. McGee*, 133 P.3d 1054, 1057 n.2 (Cal. 2006). However, generic extortion contains no requirement that the threat be of immediate harm; a threat of future harm will suffice. *See Scheidler*, 537 U.S. at 409; 3 LaFave § 20.4(a).

*Force or Fear Beyond Initial Taking*: While California's definition of robbery does cover defendants who use force in the course of their escape, *see People v. Flynn*, 91 Cal. Rptr. 2d 902, 906 (Ct. App. 2000), we are not persuaded that this exceeds robbery's generic definition. Though, traditionally, force used during an escape does not satisfy the force element of robbery, the modern approach is in line with California's

---

**[9]**The "with consent" element of generic extortion is not inconsistent with the "against the will" element of a Cal. Penal Code § 211 conviction for a taking involving threats to property. As LaFave explains:

> It is sometimes said that robbery differs from statutory extortion in those states which require property acquisition in that in the former the taking of property must be "against the will" of the victim, while in the latter the taking must be "with the consent" of the victim, induced by the other's unlawful threat; but, in spite of the different expressions, there is no difference here, for both crimes equally require that the defendant's threats induce the victim to give up his property, something which he would not otherwise have done.

3 LaFave § 20.4(b) (footnote omitted).

law. *See* LaFave § 20.3(e); Model Penal Code § 222.1 ("An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission.").

*Claim-of-Right*: Becerril inaccurately states that California has abolished the so-called "claim of right" defense to robbery, which applies in cases where the defendant had a good faith belief that he was entitled to the property taken. Rather, California has simply excluded from this defense cases where the robbery is perpetrated "to satisfy, settle or otherwise collect on a debt, liquidated or unliquidated." *People v. Tufunga*, 987 P.2d 168, 181 (Cal. 1999). The California Supreme Court drew a distinction between these cases and cases where the defendant took *specific* property to which he believed he was entitled. *Id.* Such curtailing of the claim of right defense is entirely consistent with the vast majority of modern cases to consider the question, which have emphasized the public policy against self-help in such situations. *See id.* at 177 (citing cases); 3 LaFave § 20.3(b). This approach therefore keeps Cal. Penal Code § 211 within the modern, generic definition of robbery.

*Aiding and Abetting*: Becerril also argues that California's law of aiding and abetting is significantly broader than the generic definition. The Supreme Court, however, rejected this argument in *Duenas-Alvarez*, 127 S.Ct. at 822.

**[16]** Accordingly, we hold that a conviction under Cal. Penal Code § 211 could only result from conduct that constitutes a "crime of violence" for purposes of U.S.S.G. § 2L1.2.[10] The district court properly applied the 16-level enhancement.

---

[10]Because we rely on the categorical approach, we need not decide whether the documents indicating that Becerril committed his robbery by using a knife would be judicially noticable or dispositive for purposes of the modified categorical analysis. *See Shepard v. United States*, 544 U.S. 13, 20-21 (2005).

## B.  Apprendi *Error*

**[17]** Becerril attacks his sentence under *Apprendi v. New Jersey,* 530 U.S. 466 (2000), which generally requires that facts increasing a sentence beyond the statutory maximum be found by a jury or admitted by the defendant. According to Becerril, the judicial finding that he was previously deported after a crime of violence violates *Apprendi* because it increased his statutory maximum from two to 20 years. *See* 8 U.S.C. § 1326; *United States v. Covian-Sandoval*, 462 F.3d 1090 (9th Cir. 2006). We disagree. As to the conviction itself, Becerril's argument is squarely foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998), which allows judicial fact-finding of prior convictions, and also by our decisions confirming that *Almendarez-Torres* remains binding authority. *See United States v. Beng-Salazar*, 452 F.3d 1088, 1091 (9th Cir. 2006); *United States v. Rodriguez-Lara*, 421 F.3d 932, 949-50 (9th Cir. 2005). And as to the date of the prior removal, the jury necessarily found that Becerril had been previously removed, and because the only removal argued to the jury occurred in 2005, the jury also necessarily found that Becerril had been removed subsequent to his 1986 robbery conviction. *See United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1094 (9th Cir. 2007). Further, Becerril never challenged any of his prior removals and did not raise the issue at sentencing. Therefore, any error here would not warrant reversal. *Covian-Sandoval*, 462 F.3d at 1098.

## C.  *Acceptance of Responsibility*

**[18]** Becerril argues that the district court improperly denied him a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. "In making the determination whether a defendant has accepted responsibility, the district court may not consider against the defendant any constitutionally protected conduct." *United States v. Ochoa-Gaytan*, 265 F.3d 837, 842 (9th Cir. 2001) (citation and quotation marks

omitted). Here, contrary to Becerril's contention, the court's decision did not rest improperly on the fact that he challenged the validity of his deportation proceedings. Rather, the court relied on Becerril's failure to admit his earlier deportation in his post-arrest statements or at trial. Nothing in the trial transcript suggests Becerril admitted being deported to the border agent in the field, and he never returned with more evidence, as the district court invited him to do, that he had made such an admission. Accordingly, the district court did not clearly err when it denied the downward adjustment. *See United States v. Cantrell*, 433 F.3d 1269, 1284-86 (9th Cir. 2006).

## D.   *Reasonableness*

Finally, Becerril claims that his 100-month sentence was unreasonable. He contends the district court (1) treated the Guideline range as presumptively reasonable; (2) failed to consider the factors in 18 U.S.C. § 3553(a); and (3) imposed a sentence that was excessive in comparison to those received by defendants with similar criminal histories. We review for abuse of discretion, and will not reverse unless the sentence was procedurally erroneous or substantively unreasonable. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008).

Becerril's first two arguments are procedural challenges. "It would be a procedural error for a district court to . . . treat the Guidelines as mandatory instead of advisory; to fail to consider the § 3553(a) factors; . . . or to fail adequately to explain the sentence selected." *Id.* at 993. However, we have emphasized that

> [w]hat constitutes a sufficient explanation will necessarily vary depending upon the complexity of the particular case, whether the sentence chosen is inside or outside the Guidelines, and the strength and seriousness of the proffered reasons for imposing a sentence that differs from the Guidelines range. A within-Guidelines sentence ordinarily needs little

explanation unless a party has requested a specific departure, argued that a different sentence is otherwise warranted, or challenged the Guidelines calculation itself as contrary to § 3553(a). This is because both the Commission and the sentencing judge have determined that the sentence comports with the § 3553(a) factors and is appropriate in the ordinary case.

*Id.* at 992.

Here, the district court stated on the record that it considered the § 3553(a) factors, and indicated that it considered the most salient feature of Becerril's individual circumstances to be his extensive criminal history. The court explained that it used the Guidelines range as a starting point in determining the sentence, and simply did not find the case to warrant a departure.

We have little trouble concluding that this explanation was sufficient. The sentence fell at the low end of the applicable Guidelines range, and Becerril specifically argued for "the low end" in both his sentencing memorandum and at the sentencing hearing. The court did not consider the Guidelines range to be presumptively reasonable, and no more explanation was needed to indicate consideration of the § 3553(a) factors. *See id.* ("The district court need not tick off each of the § 3553(a) factors to show that it has considered them."). Given the parties' agreement that a low-end sentence was appropriate, further commentary from the bench was simply unnecessary.

**[19]** Finally, the district court was well within its discretion to reject Becerril's argument that his sentence would create unwarranted disparities with other § 1326 defendants. *See* 18 U.S.C. § 3553(a)(6). As it is on appeal, Becerril's argument was conclusory and offered no meaningful way for the district court to gauge the discrepancies that the sentence would

create, if any. Indeed, in the absence of any compelling argument about Becerril's particular circumstances, we have trouble imagining why a sentence within the Guidelines range would create a disparity, since it represents the sentence that most similarly situated defendants are likely to receive. *See Carty*, 520 F.3d at 988 ("[W]e recognize that a correctly calculated Guidelines sentence will normally not be found unreasonable on appeal."). Accordingly, the 100-month sentence was not unreasonable.

Because we reject each of Becerril's challenges, his conviction and sentence are AFFIRMED.