FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUL 10 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. JOSE MARIA CHAVEZ-CUEVAS, Defendant-Appellant. | No. 15-50480 D.C. No. 3:15-cr-01338-BEN-1 OPINION |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted December 6, 2016
Pasadena, California

Before: Consuelo M. Callahan, Carlos T. Bea, and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Bea, Circuit Judge:

Jose Maria Chavez-Cuevas, a Mexican citizen, entered the United States illegally several decades ago. Once here, he engaged in illegal drug use and other crimes. He was convicted of robbery in California in 2003. He served four years in prison. He was then deported to Mexico.

About a week after this first deportation, he was found by federal agents to be unlawfully in the United States. He was convicted on federal charges of having illegally reentered the country without authorization and served four more years in prison. After this second prison term, he was again removed from the United States by immigration authorities in 2010 and lived in Tijuana for the next five years. Chavez-Cuevas claims that upon learning his mother (who lived in Los Angeles) was suffering from serious heart problems, he again illegally entered the United States to attempt to visit her briefly. He was again detained by federal immigration authorities.

Upon being again charged with being a removed person found unlawfully in the United States (in violation of 8 U.S.C. § 1326), he stated his intention to plead guilty. He engaged in a plea colloquy with a magistrate judge, who recommended the district court judge accept his guilty plea. The district court judge held a sentencing hearing, but neither expressly accepted nor rejected his guilty plea; nonetheless, that judge did sentence him to 57 months of prison. In so doing, the district court applied a 16-level sentencing enhancement pursuant to the Sentencing Guidelines on the basis of Ninth Circuit precedent that found robbery under California Penal Code § 211 (of which Chavez-Cuevas was convicted in 2003) to be categorically a crime of violence.

On appeal, Chavez-Cuevas asserts that the district court erred in sentencing him at all without first adjudicating his guilt and further erred in applying a 16-level crime of violence sentencing enhancement in light of recent Supreme Court precedent purportedly in conflict with the Ninth Circuit precedent on which the district court relied. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

Jose Maria Chavez-Cuevas was born to a poor family in Michoacán, Mexico. According to him, his father died when he was twelve and his mother later remarried and moved to the United States. By the age of nineteen, he had married and had children. Given his poor prospects in Mexico, he decided to follow his mother with his family to the United States. He worked for a time in construction but began using cocaine, which developed into repeated drug use and involvement in crime. He was convicted of selling marijuana and later of three misdemeanors. He then committed a robbery in California in 2003, for which he served four years in prison, and was later removed by immigration authorities from the United States. Roughly a week after such removal, he attempted to return illegally to the United States; he was caught, convicted, and sentenced to 48 months of prison. After serving this sentence, he was again removed to Mexico in 2010 where he lived until 2015 working as a waiter and later a valet parking attendant at *Angeles* hospital in Tijuana. Early in 2015, Chavez-Cuevas claims to

3

have learned that his mother, who he had not seen in a decade, was suffering from worsening heart problems. This information ostensibly motivated Chavez-Cuevas to reenter the United States — after being refused a humanitarian visa — only to visit his sick mother before returning to his life, job, and friends in Tijuana. He crossed the border near Tecate where border patrol agents found him hiding in some brush.

The United States Attorney filed an information with the district court for the Southern District of California charging Chavez-Cuevas with a violation of 8 U.S.C. § 1326, which makes it a felony for an alien who had previously been removed to be again in the United States unlawfully.

Chavez-Cuevas then appeared before a United States magistrate judge for a "change of plea hearing." The hearing occurred because Chavez-Cuevas "signed a written consent form giving up [his] right to enter a guilty plea before the District Judge who will sentence [him]." The magistrate judge explained to Chavez-Cuevas his constitutional rights, the elements of § 1326 that the prosecution would need to prove were he not to plead guilty, and the possible penalties were he convicted of this offense, all of which admonishments Chavez-Cuevas stated he understood. The magistrate judge also investigated and accepted the factual basis for Chavez-Cuevas's guilty plea. Chavez-Cuevas then pled "guilty" to "[c]ount 1 of the information." The magistrate judge concluded (after taking pleas from a

group of defendants including Chavez-Cuevas) that "[t]his Court find[s] that the Defendants' pleas are made knowingly and voluntarily, with a full understanding of the nature of the charge, their rights, and the consequences of their pleas, and that there is a factual basis for each of the pleas. I'll therefore recommend to your assigned district judges that they accept the pleas which you've made before me this morning….For Mr. Chavez, the sentencing with a pre-sentence report will be on November 2nd, 9:00 a.m. before Judge Benitez." The magistrate judge filed a "Findings and Recommendation" that confirmed in writing the above-discussed factual findings and her oral recommendation that the district court accept Chavez-Cuevas's plea.

The United States Attorney filed a Sentencing Summary Chart and Government Motion under the United States Sentencing Guidelines, in which the government recommended 60 months of incarceration, to be followed by 3 years of supervised release. This recommendation was based on a pre-sentence report which determined Chavez-Cuevas should receive a 16-level crime of violence enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) (the Sentencing Guidelines) for his 2003 California robbery conviction. Chavez-Cuevas also submitted a Sentencing Summary Chart on October 27, 2015 recommending only 30 months of imprisonment.

At his sentencing hearing, Chavez-Cuevas argued that he should receive a sentence lower than the guideline range because for five years he had established a job and life in Tijuana to which he intended to return and because he tried to cross the border only to visit his ailing mother. Chavez-Cuevas also sought to preserve for appeal the issue whether robbery is categorically a crime of violence under the Sentencing Guidelines in light of the Supreme Court's decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013). The district court declined to analyze whether robbery was a crime of violence under the Sentencing Guidelines, concluding that the Ninth Circuit's decision in *United States v. Becerril-Lopez*, 541 F.3d 881 (9th Cir. 2008), foreclosed such issue.

At the hearing before the district court, Chavez-Cuevas also personally addressed the district judge, emphasizing that he tried and failed to obtain a humanitarian visa from the consulate in Tijuana to visit his mother before he attempted to cross the border. In response, the district court mentioned Chavez-Cuevas's earlier conviction for a violent robbery in which he harmed the victim with a knife in her own home. It also noted that attempting to reenter the United States after being twice removed was not a "mistake." In spite of this, the district court decided to impose a sentence of 57 months, which was the minimum of the guideline range proposed by the government, and 3 years of supervised release (to be waived in the case of deportation, exclusion, or voluntarily departure).

In closing, the district court asked: "Anything I've missed? Anything that we should cover?" Chavez-Cuevas's counsel requested appellant be incarcerated in the western region of the country, which the district court agreed to recommend. The United States Attorney did not raise any issues as outstanding.

At no point did the district court orally accept Chavez-Cuevas's guilty plea or address the magistrate judge's above-discussed recommendation. Also, at no point did Chavez-Cuevas object to any sentence upon the basis that the court had not accepted his plea of guilty.

The district court, shortly after the sentencing hearing, filed a form entering judgment against Jose Maria Chavez-Cuevas for a violation of 8 U.S.C. § 1326, which noted in a check-box form that he "pleaded guilty." The district court sentenced Chavez-Cuevas to 57 months of imprisonment and recommended the Bureau of Prisons incarcerate him within the western region of the United States. The district court assessed a fee of $100 and a fine of $500. It specified also that if Chavez-Cuevas was "deported, excluded, or allowed to voluntarily return to country of origin, [he should] not reenter the United States illegally and report to the probation officer within 24 hours of any reentry to the United States; supervision waived upon deportation, exclusion or voluntarily departure."

II.

7

On appeal, Chavez-Cuevas argues for the first time that the district court erred in sentencing him without first adjudicating his guilt. He also claims that the district court misapplied a 16-level sentencing enhancement in light of the Supreme Court decisions in *Descamps* and Mathis, 136 S. Ct. 2243 (2016).

When a defendant raises an issue, such as the lack of acceptance by the district court of his plea of guilty, on appeal that was not raised before the district court, the court of appeals may review that issue only for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 730-36 (1993). Under the plain error standard, relief is not warranted unless there has been: (1) error, (2) that was plain, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 428 (9th Cir. 2011). Plain error is invoked to prevent a miscarriage of justice or to preserve the integrity and the reputation of the judicial process. *See Olano*, 507 U.S. at 736. When an error is constitutional in nature and implicates a "structural" right, the error affects substantial rights, *United States v. Yamashiro*, 788 F.3d 1231, 1236 (9th Cir. 2015), and "undermine[s] the fairness of a criminal proceeding as a whole." *United States v. Davila*, 133 S. Ct. 2139, 2149 (2013); *see also United States v. Recuenco*, 548 U.S. 212, 218-19 (2006); *Neder v. United States*, 527 U.S. 1, 7-8 (1999) (defining structural error). Structural errors "are relatively rare, and consist of serious violations that taint the

entire trial process, thereby rendering appellate review of the magnitude of the harm suffered by the defendant virtually impossible." *Eslaminia v. White*, 136 F.3d 1234, 1237 n.1 (9th Cir. 1998) (giving examples).

The court's conclusion that a prior conviction may be used for purposes of sentencing enhancement is reviewed de novo. *See United States v. Aguila-Montes de Oca*, 655 F.3d 915, 919 (9th Cir. 2011) (per curiam) (§ 2L1.2). Whether a district court's determination that a prior conviction qualifies as a crime of violence is also reviewed de novo. *Id*.

### III.

Chavez-Cuevas emphasizes that although the magistrate judge recommended that the district court accept his guilty plea, the district court made no written or oral adjudication of guilt. Chavez-Cuevas goes on to assert that the district court's oversight was error because while district (Article III) judges may delegate certain functions to magistrate (Article I) judges, Article III requires that district court judges "retain complete supervisory control over the assistants' activities." *United States v. Raddatz*, 447 U.S. 667, 686 (1980) (Blackmun, J., concurring). Chavez-Cuevas relies on the Seventh Circuit's decision in *United States v. Harden*, which held that while a magistrate judge could hold a "colloquy for the purpose of making a report and recommendation.…[a] felony guilty plea is equal in importance to a felony trial leading to a verdict of guilty. And without

9

explicit authorization from Congress, the district court cannot delegate this vital task." 758 F.3d 886, 891 (7th Cir. 2014). He asserts that this outcome makes sense because a "guilty plea is a waiver of important constitutional rights designed to protect the fairness of a trial," which has great significance both to the particular defendant and to the systemic legitimacy of the justice system as a whole. *Id*. at 888 (quoting *Johnson v. Ohio*, 419 U.S. 924, 925 (1974)). At base, Chavez-Cuevas's contention seems to be that an affirmative adjudication of guilt by an Article III judge is one of the few procedural protections afforded to those who plead guilty so that when a district court ignores this duty it constitutes structural error.

The government responds that the acceptance of a guilty plea "need not be express." The government notes that *Harden* is not directly on point because it did not address *how* a guilty plea must be accepted, but held only that a magistrate judge did not have the authority to accept a guilty plea. Further, the government points out that two other circuits have held that a district court's implicit plea acceptance is sufficient. *United States v. Arafat*, 789 F.3d 839, 844 (8th Cir. 2015); *United States v. Sanford*, 429 F.3d 104, 107 n.2 (5th Cir. 2005). Other circuits have held that no "talismanic words" are required to accept a guilty plea. *United States v. Byrum*, 567 F.3d 1255, 1261 (10th Cir. 2009); *United States v. Battle*, 499 F.3d 315, 321-22 (4th Cir. 2007). According to the government, even

10

if the district court did err it was certainly not structural error because the district court's failure to accept expressly Chavez-Cuevas's guilty plea did not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997).

We agree that *Harden* is not directly on point. Nor is the persuasive precedent cited by the government from other circuits holding that there is no requirement of an "explicit" acceptance of a defendant's guilty plea, because in each case so cited the district court judge personally undertook an extensive plea colloquy with the defendant or the case was affirmed on other grounds. Nevertheless, we need not resolve the question whether the district court erred by not expressly accepting Chavez-Cuevas's plea, because even if there was an error, it was not "plain." First, we reject Chavez-Cuevas's argument that the district court's failure to accept expressly his plea could be a structural error. A finding that such a failure was "structural" would require automatic reversal. *See Yamashiro*, 788 F.3d at 1236. Structural errors are "structural defects in the constitution of the trial mechanism," *Id.* at 1235 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)), that "deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Neder*, 527 U.S. at 8-9 (quoting *Rose v. Clark*, 478 U.S. 570, 577-78 (1986)) (internal quotation marks omitted). While the district court here altogether skipped

11

over the crucial phase of determining Appellant's "guilt or innocence," it cannot be said that defendant was "deprive[d]…of basic protections." *Id.* (internal quotation marks omitted). That is so because the record clearly indicates that the magistrate judge undertook a full colloquy and evaluated the factual basis for Chavez-Cuevas's guilty plea. There is also no indication that Chavez-Cuevas was operating under some mental or cognitive impairment, did not wish to enter a guilty plea, or did not fully understand all the consequences of doing so. Moreover, there is no Ninth Circuit or Supreme Court precedent that holds or suggests that a district court's failure to accept a guilty plea expressly is structural error.

For these reasons, it is unclear how the district court's failure to accept expressly Chavez-Cuevas's plea affected his substantive rights or could be sufficiently grave to constitute structural error since Chavez-Cuevas's guilty plea was impliedly accepted by the district court after reviewing relevant materials and personally interacting with the defendant. The district court's failure expressly to accept Chavez-Cuevas's plea was not structural error. Moreover, because our precedent does not answer the question whether the district court must expressly accept a defendant's plea, the district court's failure to do so was not a plain error. *See Olano*, 507 U.S. at 734–35. Accordingly, even assuming the district court's

failure to accept Chavez-Cuevas's guilty plea expressly was an error, it provides no ground for reversing his conviction or sentence.

## IV.

The district court ruled that the Ninth Circuit decision in *Becerril-Lopez* was controlling precedent that advised the application of a 16-level crime of violence sentencing enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) based on Chavez-Cuevas's earlier California robbery conviction. Appellant asserts that this was reversible error because *Becerril-Lopez* is no longer good law following the Supreme Court decisions in *Descamps* and *Mathis*.

The Supreme Court established the categorical approach for evaluating whether an earlier criminal conviction can serve as the basis for a sentencing enhancement. *Taylor v. United States*, 495 U.S. 575 (1990). Under this approach, if all the elements of a state criminal statute match or comprise less conduct than the elements of the federal generic offense, the sentencing enhancement can apply because, as a logical matter, the defendant's earlier conduct must have fit within the element requirements of the generic offense. *Id*. at 599-602. In turn, the enhancement does not apply if the elements of the state criminal statute are broader — cover more potential conduct — than the conduct required by the elements of the generic offense. *Id*. *Taylor* held that the categorical approach requires a trial court to consider only the statutory definition of the prior offense. *Id*.

13

Applying this analytical framework, the Ninth Circuit in *Becerril-Lopez*, 541 F.3d at 893, found that robbery under California Penal Code § 211 (of which Chavez-Cuevas had been convicted in 2003) was categorically a crime of violence under U.S.S.G. § 2L1.2(b). California Penal Code § 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211. California Penal Code § 212 defines "fear" in § 211 to mean either 1) the "fear of an unlawful injury to the person *or property* of the person robbed, or of any relative of his or her family," or 2) the "fear of an immediate and unlawful injury to the person *or property* of anyone in the company of the person robbed at the time of the robbery." Cal. Penal Code § 212 (emphasis added).

The *Becerril-Lopez* court first found that the elements of California robbery encompassed more potential conduct and were therefore broader than the elements of federal generic robbery. *Becerril-Lopez*, 541 F.3d at 891. That is because California's robbery statute criminalizes takings accomplished by "mere threats to property" whereas the generic robbery offense does not; it requires the taking to be accomplished by a threat to a person. *Id*. The court also concluded that California robbery is not a categorical fit with federal generic extortion because California robbery includes takings by force without the consent of the victim while generic

14

extortion is limited to takings with the victim's consent. *Id*. at 892. Without

finding that California robbery (§ 211) was "divisible," the *Becerril-Lopez* court

then turned to analyze what conduct would necessarily be involved in committing

California robbery. Because "a conviction under Cal. Penal Code § 211 [that]

involved a threat not encompassed by generic robbery…would necessarily

constitute generic extortion and therefore be a 'crime of violence' under U.S.S.G. §

2L1.2," the court concluded that "a conviction under Cal. Penal Code § 211 could

only result from conduct that constitutes a 'crime of violence' for the purposes of

U.S.S.G. § 2L1.2," thereby triggering a 16-level sentencing enhancement in all

cases.[1]  *Id*. at 892-93. Put simply, the Ninth Circuit reasoned that because the

conduct necessary to commit California robbery would by definition satisfy either

the required elements of generic extortion or of generic robbery, California robbery

must categorically be a crime of violence.[2]  *Id*.

---

[1] For example, the acquisition of property through a threat towards property ("I'll shred your book of family photos unless you give me that diamond ring") that satisfies the elements of § 211 would not constitute generic robbery, which is defined as "aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving immediate danger to the person." *United States v. Santiesteban–Hernandez*, 469 F.3d 376, 380 (5th Cir.2006) (citations omitted). However, acquiring property by means of the quoted threat would satisfy the elements of generic extortion, which is defined as "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003) (citations omitted).

[2] To be sure, the California definition of robbery differs from generic extortion in one notable respect: while California robbery is accomplished "against [the victim's] will," generic extortion requires the victim's consent. Thus, at first blush, the elements of generic extortion are mis-matched with those of California robbery. If that were true, then generic extortion would not enter into the analysis and a sentencing enhancement based on a conviction for California robbery would fail under the categorical approach. But *Becerril-Lopez* resolved this issue in a way that binds our decision here. The court concluded that because both robbery and extortion "'equally require the defendant's threats to induce the victim to give up his property, something which he would not otherwise have done,'" the "'with consent' element of generic extortion is not inconsistent with the 'against the will' element" of California robbery. 541 F.3d at 892 n.9 (quoting 3 LaFave § 20.4(b)).

15

Appellant argues that the analytical approach and conclusion in *Becerril-Lopez* have been abrogated by *Descamps v. United States*, 133 S. Ct. 2276 (2013), and *Mathis v. United States*, 136 S. Ct. 2243 (2016).

*Descamps* involved a defendant convicted of being a felon in possession of a firearm, upon whom the district court imposed a sentencing enhancement under the Armed Career Criminal Act (ACCA) (18 U.S.C. § 924(e)); the Ninth Circuit affirmed. The Supreme Court reversed, holding that Descamps's prior conviction for burglary under California law was not a violent felony within the meaning of the ACCA (so as not to trigger a sentencing enhancement) because the elements of California burglary were broader (i.e., encompassed more potential conduct) than did those of the generic burglary offense. In deciding *Descamps*, the Supreme Court clarified the proper analytical approach for determining whether a prior conviction is a violent felony under the ACCA:

> Applied in that way—which is the only way we have ever allowed—the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's. All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates "several different ... crimes."

*Descamps*, 133 S. Ct. at 2285 (quoting *Nijhawan v Holder*, 557 U.S. 29, 41 (2009)).[3]

---

[3] While the government argues that *Descamps* addressed only the modified categorical approach whereas *Becerril-Lopez* considered the categorical approach, this language shows that *Descamps* addressed both approaches.

16

A case decided by the Supreme Court just last year, *Mathis v. United States*, 136 S. Ct. 2243 (2016), provided further clarity regarding the proper contours of the categorical approach in the context of a sentencing enhancement. *Mathis* involved an individual who pleaded guilty to being a felon in possession of a firearm for which the district court imposed the 15-year mandatory minimum sentence under the ACCA. *Id.* at 2250. The Eighth Circuit later affirmed. *Id.* at 2250-51. The Supreme Court reversed because the defendant's prior conviction for burglary in Iowa involved a state statute which encompassed conduct broader than the potential conduct encompassed by federal generic burglary. The Supreme Court explained:

> As just noted, the elements of Mathis's crime of conviction (Iowa burglary) cover a greater swath of conduct than the elements of the relevant ACCA offense (generic burglary).Under our precedents, *that undisputed disparity resolves this case*. We have often held, and in no uncertain terms, that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense. How a given defendant actually perpetrated the crime—what we have referred to as the "underlying brute facts or means" of commission,—makes no difference; even if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence.

*Mathis*, 136 S. Ct. at 2251 (emphasis added; internal citation omitted).

The rule that emerges clearly from these two cases is that unless the prior conviction is divisible, determining whether it is a crime of violence must "focus solely on whether the elements of the crime of conviction sufficiently match the elements of [the] generic [offense]." *Id.* at 2248, 2255 ("*Descamps* made clear that

17

when the Court had earlier said (and said and said) 'elements,' it meant just that and nothing else.")).

Before considering whether the analysis in *Becerril-Lopez* complies with this rule, two things should be noted. First, the Ninth Circuit has recognized that Supreme Court precedent regarding the application of the categorical and modified categorical approaches under the ACCA is also applicable to identify what constitutes a "crime of violence" under the Sentencing Guidelines. *United States v. Coronado*, 603 F.3d 706, 708 (9th Cir. 2010); *Aguila-Montes de Oca*, 655 F.3d at 922; *Becerril-Lopez*, 541 F.3d at 890. Second, Ninth Circuit precedent subsequent to *Becerril-Lopez* has held that California robbery (§ 211) is "not divisible" for the purposes of the modified categorical approach. *United States v. Dixon*, 805 F.3d 1193, 1198 (9th Cir. 2015) ("We have little trouble finding that CPC § 211 is not divisible.").[4] The combined implication of these cases is that California robbery (§ 211) can be a crime of violence only if it satisfies the categorical approach as defined in *Descamps* and *Mathis*, which allows a prior conviction to be considered a crime of violence only if the conduct required to meet its elements is not broader than the conduct required for guilt under a relevant generic offense.

---

[4] This is because a jury adjudicating Dixon's guilt for his prior robbery conviction could have rendered a verdict of guilty even though six jurors found a threat to a person (generic robbery) and six jurors found a threat to property (generic extortion). *Dixon*, 805 F.3d at 1198.

18

The complication that emerges in evaluating whether the decision in *Becerril-Lopez* still comports with the categorical approach, as clarified in *Mathis* and *Descamps*, is that *Becerril-Lopez*'s analysis of whether California robbery categorically constitutes a crime of violence had to look to *two* different possibly relevant generic crimes. While *Becerril-Lopez* looked to a second relevant generic offense (generic extortion in addition to generic robbery) when analyzing whether a prior California robbery conviction was categorically a crime of violence, *Mathis* and *Descamps*, by contrast, analyzed only whether the elements of a prior state burglary conviction were broader than generic burglary. These Supreme Court decisions did not consider whether potential conduct proscribed by a state burglary statute but not by the generic burglary offense could categorically satisfy the elements of a different enumerated generic crime of violence.

This difference is not, however, sufficient to establish that these cases abrogated *Becerril-Lopez* once one considers the details of each case. *Mathis* found that the Iowa burglary statute of which defendant had been previously convicted encompassed more potential conduct and was therefore broader than the generic offense: "The generic offense requires unlawful entry into a 'building or other structure.'…Iowa's statute, by contrast, reaches a broader range of places: 'any building, structure, [or] land, water, or air vehicle.'" *Mathis*, 136 S. Ct. at 2250 (internal citations omitted). *Descamps* drew the same conclusion with

19

respect to California's burglary statute. Generic burglary "requires an unlawful entry along the lines of breaking and entering" whereas California burglary § 459 has no such requirement, such that it even "covers simple shoplifting." *Descamps*, 133 S. Ct. at 2285 (internal citations omitted).

From this comes the crucial point. The greater scope of conduct made criminal under the elements of the state burglary statutes in *Mathis* (unlawful entry into spaces other than buildings or structures, such as land, water, or air vehicles) and *Descamps* (simple shoplifting) would not result in criminal liability under another enumerated generic offense, defined as a crime of violence, in the ACCA. *See* 18 U.S.C. § 924(e)(2)(B)(ii) (defining a crime of violence under the ACCA as, *inter alia*, "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another"). Conversely, the Sentencing Guidelines define a crime of violence in that context as:

> "Crime of violence" means any of the following offenses under federal, state, or local law: murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, *robbery*, arson, *extortion*, the use or unlawful possession of a firearm described in 26 U.S.C. 5845(a) or explosive material as defined in 18 U.S.C. 841(c), or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 (emphasis added). Unlike in *Descamps* and *Mathis* in which the definitional list from the ACCA for a crime of violence clearly did not offer any other relevant generic offense that could cover the conduct encompassed in the overbroad elements of the prior state conviction, the definitional list for a crime of

20

violence from the Sentencing Guidelines clearly did offer a second relevant generic offense (extortion) against which the elements of the prior conviction could be compared. Had the ACCA included another generic offense potentially relevant to burglary and had the Supreme Court declined to consider this second relevant generic offense in its application of the categorical approach, we likely would be compelled to conclude that *Becerril-Lopez* had been impliedly abrogated. However, such was not the case and for that reason we conclude that *Mathis* and *Descamps* did not impliedly abrogate *Becerril-Lopez*.

Taken together, the application of the categorical approach in *Becerril-Lopez* was not a conduct-based analysis proscribed by *Descamps* and *Mathis* because it focused squarely on the elements of California robbery and the relevant generic offenses and not on a particular defendant's conduct. Moreover, the *Becerril-Lopez* court's analysis of whether the elements of California robbery (§ 211) encompassed potential conduct that was broader than the conduct encompassed by the elements of both relevant generic offenses viewed together does not clearly contradict the Supreme Court's decisions in *Descamps* and *Mathis*, which addressed prior convictions that involved analysis of only one relevant generic offense. Finally, the *Becerril-Lopez* court's approach complies with the rationale behind the categorical approach, which seeks to impose a sentencing enhancement only for prior crimes that were categorically crimes of violence. In considering the

21

full range of relevant generic offenses, the *Becerril-Lopez* court properly analyzed exactly this question and rightly determined that while California robbery (§ 211) may be broader than two particular generic offenses, it nevertheless was categorically a crime of violence because its elements would always constitute either generic robbery or generic extortion, both of which are defined as crimes of violence in U.S.S.G. § 2L1.2(b)(1)(A)(ii).  For these reasons, the district court properly relied on *Becerril-Lopez* to impose a 16-level sentencing enhancement.

**AFFIRMED.**