**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

LECHARLES BALDON,
*Defendant-Appellant.*

No. 18-10411

D.C. No.
3:17-cr-00007-
LRH-CBC-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted November 13, 2019
San Francisco, California

Filed April 21, 2020

Before: Mark J. Bennett and Kenneth K. Lee, Circuit
Judges, and Lawrence L. Piersol,* District Judge.

Opinion by Judge Bennett

---

*The Honorable Lawrence L. Piersol, United States District Judge
for the District of South Dakota, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed in part and vacated in part the district court's application of the Sentencing Guidelines, and remanded for resentencing, in a case in which the defendant argued that the district court erred in finding (1) that his prior convictions for carjacking under section 215 of the California Penal Code qualify as crimes of violence under U.S.S.G. § 4A1.1(e); and (2) that he possessed a firearm under U.S.S.G. § 2D1.1(b)(1).

The panel held that *Solorio-Ruiz v. Sessions*, 881 F.3d 733 (9th Cir. 2018)—which held that carjacking under section 215 is not a crime of violence under 8 U.S.C. § 1101(a)(43)(F) because that statute requires only force in excess of that required to seize the vehicle, however slight that may be—is irreconcilable with, and no longer good law following, the Supreme Court's decision in *Stokeling v. United States*, 139 S. Ct. 544 (2019), which clarified that the requisite "violent force" for a crime of violence is any force sufficient to overcome a victim's physical resistance. The panel held that *Nieves-Medrano v. Holder*, 590 F.3d 1057 (9th Cir. 2010) (order), which *Solorio-Ruiz* abrogated, is not controlling.

The panel nevertheless held that carjacking under section 215 is not a crime of violence under U.S.S.G. § 4A1.1(e). Because section 215 may be violated through fear of injury

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

to property alone and therefore criminalizes a broader range of conduct than the federal definition of "crime of violence," the panel held that section 215 is not a categorical match to the elements clause, U.S.S.G. § 4B1.2(a)(1), or the enumerated offenses clause, U.S.S.G. § 4B1.2(a)(2). The panel added that section 215 is not divisible, and that the modified categorical approach is therefore inapplicable.

Rejecting the defendant's argument that there was insufficient evidence that he owned the gun or was aware of its presence, the panel held that the district court properly applied a two-level enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1).

## COUNSEL

Justin J. Bustos (argued), Dickinson Wright PLLC, Reno, Nevada, for Defendant-Appellant.

Nancy M. Olson (argued), Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Nicholas A. Trutanich, United States Attorney; United States Attorney's Office, Las Vegas, Nevada; for Plaintiff-Appellee.

**OPINION**

BENNETT, Circuit Judge:

LeCharles Baldon pled guilty to possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a), and the district court sentenced him to 184 months. This case presents two issues: first, whether Baldon's prior convictions for carjacking under section 215[1] of the California Penal Code qualify as crimes of violence under U.S.S.G. § 4A1.1(e), and second, whether the district court erred in finding that Baldon possessed a firearm under U.S.S.G. § 2D1.1(b)(1). We hold that section 215 is not a categorical crime of violence, and thus the district court erred in calculating Baldon's sentence. But the district court did not err in finding that Baldon possessed a firearm.

**I.**

In 2016, the FBI received information that Baldon was dealing methamphetamine and heroin in Reno, Nevada. The FBI and the DEA set up four controlled buys in late 2016, utilizing an informant.[2] Federal agents saw that Baldon accessed a storage unit before his first meeting with the informant. The agents contacted the storage company and learned that the unit was rented to Angelique Baker. On January 3, 2017, a manager of the storage company told the agents that Baldon had come to the office and paid to extend the lease. Agents conducted a sweep of storage units with a

---

[1] All "section" references are to the California Penal Code.

[2] The dates of these buys were November 18, December 1, December 6, and December 20.

drug dog, and the dog alerted on the unit Baldon had accessed.

On January 17, 2017, agents arrested Baldon and executed a search warrant on his residence and the storage unit. At Baldon's residence, agents found methamphetamine, cocaine, two scales, and packaging material, as well as 9-millimeter ammunition matching the caliber of the weapon found in the storage unit.[3] The agents found a backpack containing methamphetamine, heroin, and a loaded gun in the storage unit.

The government charged Baldon with various methamphetamine and heroin offenses and being a felon in possession of a firearm. Baldon pled guilty to one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C)

The district court calculated a total offense level of 31 and a criminal history category V (based on 11 criminal history points), resulting in a 168 to 210 month guideline range. The district court's sentencing calculation included two criminal history points under U.S.S.G. § 4A1.1(e) for Baldon's prior carjacking convictions and a two-point enhancement for the possession of a firearm under U.S.S.G. § 2D1.1(b)(1). The district court agreed with the government and applied the "modified categorical approach" (looking at the charging documents) to determine whether Baldon's prior carjacking convictions were crimes of violence under U.S.S.G. § 4A1.1(e). The district court sentenced Baldon to

---

[3] The government noted this to the district court at sentencing. Baldon did not contest this fact before the district court.

184 months. We have jurisdiction under 18 U.S.C. § 3742(a) and 18 U.S.C. § 1291.

## II.

We review de novo a district court's determination that "a prior conviction qualifies as a crime of violence." *United States v. Perez*, 932 F.3d 782, 784 (9th Cir. 2019) (citing *United States v. Rivera-Muniz*, 854 F.3d 1047, 1048–49 (9th Cir. 2017)). We apply the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990), to determine whether a state conviction qualifies as a crime of violence under U.S.S.G. § 4A1.1(e). *See id.* "Under the categorical approach, we compare the elements of each offense with the federal definition of 'crime of violence' to determine whether the [state] offense criminalizes a broader range of conduct than the federal definition captures." *United States v. Edling*, 895 F.3d 1153, 1155 (9th Cir. 2018). If the state offense proscribes conduct beyond the federal definition, it will not qualify as a crime of violence. *See United States v. Bankston*, 901 F.3d 1100, 1102–03 (9th Cir. 2018).

However, even if the offense is not a categorical match, we may use the modified categorical approach if the state statute is divisible, i.e., if it sets out one or more elements of the offense in the alternative. *Id.* at 1103 n.2; *see also Perez*, 932 F.3d at 785 n.1. "If 'a defendant was convicted of violating a divisible statute,' a court may employ the modified categorical approach, for which it must 'identify, from among several alternatives, the crime of conviction so that the court may compare it to the generic offense.'" *United States v. Brown*, 879 F.3d 1043, 1047 n.1 (9th Cir. 2018) (quoting *Descamps v. United States*, 570 U.S. 254, 263–64 (2013)).

## A.

Before applying the categorical approach, we must first decide whether we are bound by *Solorio-Ruiz v. Sessions*, 881 F.3d 733 (9th Cir. 2018), where we held that section 215 is *not* a crime of violence under 8 U.S.C. § 1101(a)(43)(F)[4]. The government argues that *Solorio-Ruiz* is clearly irreconcilable with the Supreme Court's decision in *Stokeling v. United States*, 139 S. Ct. 544 (2019). We agree.

A three-judge panel is bound by prior circuit decisions unless the decision is "'clearly irreconcilable' with a subsequent Supreme Court decision." *United States v. Shelby*, 939 F.3d 975, 978 (9th Cir. 2019) (quoting *Close v. Sotheby's Inc.*, 894 F.3d 1061, 1072–73 (9th Cir. 2018)). "The issues decided by the higher court need not be identical," only that the Supreme Court "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). "The clearly irreconcilable requirement is a high standard," and as long as we "can apply our prior circuit precedent without

---

[4] 8 U.S.C. § 1101(a)(43)(F) defines "crime of violence" by cross-referencing the definition provided in 18 U.S.C. § 16. Section 16 defines "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

running afoul of the intervening authority[,] [we] must do so." *Sotheby's*, 894 F.3d at 1073 (internal quotation marks omitted) (quoting *United States v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017), *vacated on other grounds*, 139 S. Ct. 1543 (2019)).

In *Solorio-Ruiz*, we relied on *Johnson v. United States*, 559 U.S. 133 (2010), to conclude that carjacking under section 215 was not a crime of violence because section 215 "does not require the violent force that *Johnson* demands of a crime of violence" and "requires only force in excess of that required to seize the vehicle, however slight that may be." 881 F.3d at 737 (internal quotation marks omitted). We interpreted *Johnson* to require "that the physical force that a crime of violence entails" must be "*violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 736. We looked to California cases interpreting section 215 and found that the statute does not require the use of violent force because "California carjacking 'requires only force in excess of that required to seize the vehicle,' however slight that may be." *Id.* at 737 (quoting *People v. Hudson*, 217 Cal. Rptr. 3d 775, 782 (Ct. App. 2017)). We relied on *Hudson*'s facts to conclude that the force inherent in driving the stolen vehicle can be "enough to sustain a carjacking conviction, *whenever the victim puts up the slightest resistance*." *Id.* (emphasis added) (citing *Hudson*, 217 Cal. Rptr. 3d at 782).

Last year the Supreme Court revisited *Johnson* in *Stokeling*. The Court explained that at common law the terms "violence" and "force" were used interchangeably, and that "[t]he common law also did not distinguish between gradations of 'violence.' If an act physically overcame a victim's resistance, 'however slight' that resistance might be, it necessarily constituted violence." *Stokeling*, 139 S. Ct.

at 550. This understanding of "physical force" aligns with *Johnson* because "the force necessary to overcome a victim's physical resistance is inherently 'violent' in the sense contemplated by *Johnson*, and 'suggest[s] a degree of power that would not be satisfied by the merest touching.'" *Id.* at 552–53 (quoting *Johnson*, 559 U.S. at 139).

This clarification of "violent force" (any force sufficient to overcome a victim's physical resistance) is "clearly irreconcilable" with our reasoning in *Solorio-Ruiz*. Our opinion rested on the analytical distinction between substantial and minimal force. This distinction no longer exists. *See Ward v. United States*, 936 F.3d 914, 919 (9th Cir. 2019). As a result, *Solorio-Ruiz*'s holding is no longer good law.

Baldon argues, however, that *Solorio-Ruiz* is not "clearly irreconcilable" with *Stokeling*, relying on the Court's clarification that under Florida law a defendant is not guilty of robbery when he "merely snatches money from the victim's hand" or steals a gold chain and the victim feels defendant's fingers on her skin. *See Stokeling*, 139 S. Ct. at 555.

We have recently clarified that "*Stokeling* made clear that force involved in snatchings, *where there is no resistance*, is not sufficient to fall under the [statutory] force clause." *Ward*, 936 F.3d at 919 n.4 (emphasis added). But Baldon cites no authority showing, and we have found none, that carjacking can be accomplished by force with no resistance from the victim. Rather, California courts have held that "a perpetrator accomplishes the taking of a motor vehicle by means of force, as defined under section 215, when the perpetrator drives the vehicle *while a victim holds on or otherwise physically attempts to prevent the theft*." *People v. Lopez*, 214 Cal. Rptr. 3d 618, 623 (Ct. App. 2017)

(emphasis added); *accord Hudson*, 217 Cal. Rptr. 3d at 779.[5] Thus, we may no longer rely on *Solorio-Ruiz.*

## B.

We have one final question to resolve before we proceed to determine whether carjacking is categorically a crime of violence: Does *Nieves-Medrano v. Holder*, 590 F.3d 1057 (9th Cir. 2010) (order), the case that *Solorio-Ruiz* abrogated, now control our decision? We conclude that it does not for two reasons. First, the holding of *Nieves-Medrano* rested mainly on our decision in *United States v. Becerril-Lopez*, 541 F.3d 881, 893 (9th Cir. 2008), in which we held that robbery under section 211 was a crime of violence under U.S.S.G. § 2L1.2. *See* 590 F.3d at 1057–58. We recently abrogated *Becerril-Lopez* after holding that section 211 robbery was no longer a categorical crime of violence. *See Bankston*, 901 F.3d at 1102. Second, our legal conclusion in *Nieves-Medrano* rested on a crime of violence definition

---

[5] Baldon cites one California robbery case, *People v. Lescallett*, 176 Cal. Rptr. 687 (Ct. App. 1981), that may support his contention that robbery in California may be accomplished with no resistance by the victim. This is insufficient to cast doubt on the clear authority in *Hudson* and *Lopez* that tells us that physical resistance *is* required for carjacking based on force.

The non-California robbery cases Baldon relies on are similarly distinguishable because they focus on statutes that require no resistance from the victim. *See United States v. Bong*, 913 F.3d 1252 (10th Cir. 2019) (holding that Kansas robbery statute could be accomplished by mere snatching of the purse "without any resistance by or injury to the victim"); *United States v. Strickland*, 860 F.3d 1224 (9th Cir. 2017) (finding Oregon third degree robbery statute could be accomplished by purse snatching). We affirmed the vitality of *Strickland* after *Stokeling* on this distinction in *United States v. Shelby*, 939 F.3d 975, 979 (9th Cir. 2019).

broader than the one applicable here in U.S.S.G. § 4B1.2(a). *See Becerril-Lopez*, 541 F.3d at 889. Thus, *Nieves-Medrano* is relevant but not controlling.

## III.

Having resolved these preliminary questions, we now consider whether section 215 carjacking is a categorical crime of violence under U.S.S.G. § 4A1.1(e). We conclude it is not.

## A.

Section 4A1.1(e) borrows the definition of "crime of violence" from U.S.S.G. § 4B1.2(a). *See* U.S.S.G. § 4A1.2(p).

U.S.S.G § 4B1.2(a) states:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

The government argues that section 215 is a categorical crime of violence under both subsections (a)(1) and (a)(2). Subsection (a)(1) is commonly known as the "elements" or "force" clause, and subsection (a)(2) is often called the "enumerated offenses" clause.**[6]** *See Bankston*, 901 F.3d at 1106 n.4; *Edling*, 895 F.3d at 1155. Baldon argues that the government waived these arguments because it failed to raise them before the district court.

"Generally, we do not entertain arguments on appeal that were not presented or developed before the district court." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1193 (9th Cir. 2016) (en banc) (alteration and internal quotation marks omitted). But we have discretion to consider waived issues in three circumstances: "in the 'exceptional' case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process," "when a new issue arises while appeal is pending because of a change in the law," and "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985).

We exercise our discretion to consider the government's argument that section 215 is a categorical crime of violence under the elements clause in § 4B1.2(a)(1) because there was a "change in the law." *Id.* The Supreme Court decided *Stokeling* while Baldon's appeal was pending. We also exercise our discretion to consider the government's

---

**[6]** The Court's recent decision in *Shular v. United States*, 140 S. Ct. 779 (2020) does not affect our analysis. There, the Court addressed why the elements clause analysis, *id.* at 786, and the enumerated offenses clause analysis, *id.* at 785–86, for statutes like the one here, are *not* impacted by its opinion in *Shular*.

argument that section 215 is a crime of violence under the enumerated offenses clause in § 4B1.2(a)(2) because it "is purely one of law and . . . does not depend on the factual record developed below." *Id.* We do so because as explained below, both analyses turn on the same question: Can a section 215 conviction be based on fear of injury to property alone?

## B.

Because the categorical approach requires us to compare the federal definition of "crime of violence" with the elements of the state offense, our analysis begins by comparing the applicable federal definition and section 215. *See Edling*, 895 F.3d at 1155.

Section 215 will qualify as a crime of violence under § 4B1.2 if it is a categorical match to either the elements clause (subsection (a)(1)) or the enumerated offenses clause (subsection (a)(2)). *See id.*

In determining whether section 215 is a categorical match, we consider the statute's text, and "we may [also] consider the interpretation of the statute provided by state courts." *Perez*, 932 F.3d at 785.

Section 215's text criminalizes:

> the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession

> of the motor vehicle of his or her possession,
> accomplished by means of force or fear.

Cal. Pen. Code § 215(a). Baldon argues that section 215 may be violated through fear of injury to property alone, without any fear of injury to a person, and therefore, the statute "criminalizes a broader range of conduct than the federal definition captures." *Edling*, 895 F.3d at 1155. We agree.

### 1.

We turn first to the elements clause. Section 215 does not textually limit "fear" to fear against the person of another, unlike § 4B1.2(a)(1). The California Legislature "created the crime of carjacking in 1993." *People v. Lopez*, 79 P.3d 548, 551 (Cal. 2003). The statute "is a direct offshoot of robbery" and its statutory language "tracks the language in the robbery statute." *Id.* at 553. As relevant here, "[b]oth are accomplished by means of force or fear." *Id.* (internal quotation marks omitted). Section 212 defines "fear" as used in the robbery statute (section 211) to include fear of injury to the property as well as the person. Cal. Pen. Code § 212. The government acknowledges that California courts construe section 215 alongside the robbery statute but argues that the carjacking statute does not import the statutory definition of fear. However, California's model jury instructions are to the contrary.[7] The carjacking instructions incorporate the statutory robbery definition of fear into the carjacking definition of fear. *See People v. Gomez*, 121 Cal. Rptr. 3d 475, 485 n.6 (Ct. App. 2011) (noting that the jury "was instructed, in accordance with CALCRIM No. 1650,

---

[7] California courts routinely cite model jury instructions authoritatively to interpret state statutes. *See, e.g.*, *People v. Montalvo*, 248 Cal. Rptr. 3d 708, 728 n.12 (Ct. App. 2019).

that fear for the purposes of the carjacking count, 'means fear of injury to the person, himself or herself or injury to *the person's* family or *property*.'" (emphasis added) *disapproved on other grounds by People v. Elizade*, 351 P.3d 1010 (2015)).

The government argues that Baldon has not established a "realistic probability" that a section 215 violation would be based on or include fear of injury to property. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (requiring a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime"). To show a "realistic probability" that California would apply section 215 to include conduct outside the scope of § 4B1.2(a)(1) Baldon has two paths. He can first "point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* Or, "if a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists . . . .'" *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1009 (9th Cir. 2015) (quoting *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) *abrogated on other grounds by United States v. Stitt*, 139 S. Ct. 2007 (2018)). "The [defendant] may simply 'rely on the statutory language to establish the statute as overly inclusive.'" *Id.* at 1010 (quoting *United States v. Vidal*, 504 F.3d 1072, 1082 (9th Cir. 2007) (en banc)).

Baldon succeeds on both paths. First, no "legal imagination" is required because section 215 explicitly defines carjacking more broadly than § 4B1.2(a)(1) by not limiting fear only to persons. Second, Baldon also points to at least one case in which the California Court of Appeal upheld a carjacking conviction based in part on fear of injury

to property. *See People v. Lopez*, No. F053928, 2008 WL 5103231, at *8 (Cal. Ct. App. Dec. 5, 2008) (unpublished) (finding sufficient evidence of "force or fear" because one of the reasonable inferences the jury could have made was "that [the victim] was concerned for the fate of his vehicle").

The government, however, states that no *published* California carjacking case has ever cited the statutory definition of fear under the robbery statute. But, we can rely, and have previously relied, on unpublished California cases to show that the state has applied the statute in a non-generic manner. *See Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 876 n.3 (9th Cir. 2008); *see also Castillo-Cruz v. Holder*, 581 F.3d 1154, 1161 n.9 (9th Cir. 2009). And, importantly, the jury instructions routinely used by California courts include fear of injury to property. It would be one thing if the fear of injury to property element were simply invented by creative defense lawyers. It is quite another when that element is part of the standard California jury instructions that are perhaps given in every case. The government also argues that the common thread weaving the carjacking cases together is threats of force against the victim.[8] But that argument misconstrues the focus of our analysis. Under the categorical approach we pay particular attention to cases "that examine the *outer contours* of the conduct criminalized." *United States v. Strickland*, 860 F.3d 1224,

---

[8] The government also briefly argues that the legislature enacted the statute because of the "serious potential for harm to the victim . . . ." *People v. Antoine*, 56 Cal Rptr. 2d 530, 534 (Ct. App. 1996) (citing legislative committee reports). But "[s]ection 215's 'actual language prevails, not the [legislative] committee's report.'" *People v. Johnson*, 343 P.3d 808, 827 (Cal. 2015) (quoting *Martinez v. Regents of Univ. of California*, 241 P.3d 855, 865 (Cal. 2010)) (finding that "immediate presence" in section 215 had the same meaning as in section 211 and could include a victim being carjacked while baking in the kitchen).

1226 (9th Cir. 2017) (emphasis added). This is necessary because "we must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized." *Moncrieffe v. Holder*, 569 U.S. 184, 190–191 (2013). Here, the least of the acts criminalized, as shown by the jury instructions, is carjacking accomplished by fear of injury to property.[9] Thus, section 215 is not a categorical match to the elements clause of § 4B1.2(a).

## 2.

We find that the government's enumerated offenses clause argument fails for the same reason: section 215 is not a categorical match because it encompasses fear of injury to property.

The government's argument is based on our decision in *United States v. Velasquez-Bosque*, 601 F.3d 955 (9th Cir. 2010), where we held that section 215 is a categorical crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because carjacking was a match to the combination of generic robbery and generic extortion under the enumerated offenses clause. *Id.* at 959.[10] Our analysis was "largely controlled by

_____

[9] The government also relies on *United States v. Ramos*, 312 F. App'x 852 (9th Cir. 2009), to support its elements clause argument. That non-precedential decision relied on *United States v. Becerril-Lopez*, 541 F.3d 881 (9th Cir. 2008) *abrogated by United States v. Bankston*, 901 F.3d 1100 (9th Cir. 2018). But our holding in *Becerril-Lopez* depended on the *enumerated offenses clause* analysis. 541 F.3d at 891–92. We explicitly noted in *Becerril-Lopez* that California robbery was not a match for generic robbery under the *elements* clause of the Sentencing Guidelines. *Id.* at 891.

[10] We defined general robbery as "aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving immediate danger to the person," and generic extortion as

our decision in *United States v. Becerril-Lopez*," where after comparing the common elements of sections 215 and 211 we found that "[t]o the extent that the elements in section 211 are identical to those in section 215, *Becerril-Lopez* requires us to reach the conclusion that section 215 is also a crime of violence because it criminalizes the same or less conduct as the combination of generic robbery and generic extortion." *Id.* at 958–59. But *Becerril-Lopez* is no longer good law. *See Bankston*, 901 F.3d at 1104 (holding that section 211 robbery is "no longer a categorical match to a combination of Guidelines-described robbery and extortion" because the Guidelines' new extortion definition "does not criminalize extortion committed by threats to property").

We find the logic of *Bankston* equally applicable to section 215. As we explained in *Bankston*, the definition of "generic extortion" changed after the 2016 amendments to the Sentencing Guidelines, and it no longer includes fear of injury to property. *Id.* at 1103–04. Carjacking is thus no longer a categorical match for generic robbery and extortion. *Velasquez-Bosque*'s holding to the contrary is no longer good law.

This leaves us only to decide whether carjacking qualifies as a crime of violence under the modified categorical approach (which, as discussed above, requires a divisible statute). Here, however, the government does not contest Baldon's argument that section 215 is *indivisible* and thus concedes the point. *See United States v. Peterson*, 902 F.3d 1016, 1021 n.2 (9th Cir. 2018). But even if the government had argued that section 215 is divisible and that

---

"obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." *Velasquez-Bosque*, 601 F.3d at 958, 959.

the district court was correct in applying the modified categorical approach, we would disagree. *See United States v. Dixon*, 805 F.3d 1193, 1198–99 (9th Cir. 2015).

A divisible statute "must contain 'multiple, alternative elements of functionally separate crimes.'" *Id.* at 1198 (quoting *Rendon v. Holder*, 764 F.3d 1077, 1085 (9th Cir. 2014)). Thus, in *Dixon* we held that section 211 was not divisible, even though it was disjunctively worded, because the phrases were "alternative means, not alternative elements." *Id.* So too here. Section 215 contains several disjunctively worded phrases such as "force or fear," "person or immediate presence," and "permanently or temporarily." Cal. Pen. Code § 215. California model jury instructions for section 215, like those for section 211, *see Dixon*, 805 F.3d at 1198, show that these disjunctively worded phrases are in fact alternative means, not elements. *See* Criminal Jury Instructions § 1650 (Jud. Conf. of Cal. 2019). For example, jurors need not agree on whether defendant "used force or fear"—"a jury can return a guilty verdict even if some jurors believe the defendant used force and others believe the defendant used fear." *Id.* Thus, section 215, like section 211, is indivisible. Accordingly, the modified categorical approach is inapplicable. *See Brown*, 879 F.3d at 1047 n.1.

The district court thus erred in determining Baldon's criminal history points and category.

## IV.

Baldon next challenges the calculation of his base offense level based on a two-point enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1). He argues there was insufficient evidence that he owned the gun or was aware of its presence. We disagree.

**A.**

We review a district court's factual finding that U.S.S.G. § 2D1.1(b) applies for clear error. *United States v. Boykin*, 785 F.3d 1352, 1364 (9th Cir. 2015). "Clear error requires a 'definite and firm conviction that a mistake' occurred." *United States v. Gardenhire*, 784 F.3d 1277, 1280 (9th Cir. 2015) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009) (en banc)).

**B.**

Under U.S.S.G. § 2D1.1(b)(1), the district court must apply a two-point enhancement if the court finds that "a dangerous weapon (including a firearm) was possessed" during the offense. This enhancement "reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1, comment. (n.11). "The government 'must prove possession by a preponderance of the evidence before the court can apply the two-level increase under § 2D1.1(b)(1).'" *Boykin*, 785 F.3d at 1364 (quoting *United States v. Cazares*, 121 F.3d 1241, 1244 (9th Cir. 1997)). Then, "once the government demonstrates that a defendant possessed a dangerous weapon, . . . the burden of proof is on the defendant to prove that it is 'clearly improbable' that he possessed a weapon in connection with the offense." *United States v. Nelson*, 222 F.3d 545, 549 (9th Cir. 2000) (citing *United States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir. 1989); U.S.S.G. § 2D1.1(b)(1), comment. (n.3)).

**C.**

There is no dispute that the firearm was present in the storage unit in the backpack with Baldon's drugs. The contested question is whether Baldon constructively possessed the firearm. Constructive possession requires "the

government [to] prove 'a sufficient connection between the defendant and the [item] to support the inference that the defendant exercised dominion and control over [the item].'" *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990) (quoting *United States v. Disla*, 805 F.2d 1340, 1350 (9th Cir. 1986)). This is a case-specific inquiry—we ask, looking at the circumstances of each case, whether there is "such a nexus or relationship between the defendant and the [item] that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession." *Terry*, 911 F.2d at 278 (internal quotation marks omitted) (quoting *United States v. Cousins*, 427 F.2d 382, 384 (9th Cir. 1970)).

Here, the government introduced evidence that Baldon entered the storage unit, stored his drugs in the unit, and paid cash in person to extend the lease. The government also stated that the gun was in the same backpack as the drugs, and ammunition matching the firearm was found in his residence[11] contemporaneously with the search of the storage unit. Based on the evidence presented, we find that the district court did not clearly err in finding by a preponderance of the evidence that Baldon possessed the firearm found in the storage unit.[12]

Baldon, relying on a line of cases beginning with *United States v. Kelso*, 942 F.2d 680 (9th Cir. 1991), argues that this

---

[11] The ammunition match is additional evidence. But, there is more than enough evidence in the record, without the ammunition match, to support the district court's implicit finding that Baldon constructively possessed the gun.

[12] While admittedly the record could be clearer, at oral argument and in the briefs Baldon conceded that the district court did make a finding. *See* Oral Argument at 18:35–18:50, *Baldon v. United States*, No. 18-10411 (9th Cir. Nov. 13, 2019).

evidence was insufficient to infer constructive possession. We disagree.

In *Kelso* we held that mere access to a weapon was insufficient evidence of dominion or control. *Id.* at 682. There, the defendant was a passenger in a car that contained drugs and a loaded weapon in a bag behind the driver's seat. *Id.* The defendant and the driver/owner of the car admitted they knew about the drugs, but each argued that it was the other's drugs, and both denied knowledge of the gun. *Id.* at 681.

In *Cazares*, we extended our holding in *Kelso* to homes and held that mere access to weapons in a room not occupied by the defendant could not establish "possession or dominion." 121 F.3d at 1245–46. Defendant was living in an apartment with at least three other people and was found to have possessed firearms located in one of the bedrooms. We explained that possession cannot be determined by "pure speculation" and concluded that merely being one of several residents in an apartment that contained firearms was not enough to support a finding of constructive possession.[13] *Id.* at 1245.

In *United States v. Highsmith*, we found that evidence that defendant had access to and sold drugs from his cohort's bedroom did not impute knowledge to him about a firearm in the bedroom. 268 F.3d 1141, 1142 (9th Cir. 2001).

*Kelso*, *Cazares*, and *Highsmith* reflect our long history of "carefully preserv[ing] the requirement that the

---

[13] We specifically noted that the government did not "even prove that the guns were found in the bedroom occupied by [defendant]." *Cazares*, 121 F.3d at 1245.

government demonstrate sufficient indicia of dominion and control to support the inference of constructive possession." *United States v. Disla*, 805 F.2d 1340, 1351 (9th Cir. 1986). The government cannot rely only on evidence of "mere proximity" to the contraband, "mere presence on the property where it is located, or mere association, without more, with the person who does control the [contraband] or the property . . . ." *Id*. But this is not a case of mere presence or proximity, and thus this case is not governed by *Kelso*.

Baldon is not a mere passenger in a car, a roommate in a house where guns are found, or a roommate dealing drugs from a cohort's bedroom. The government proved that Baldon used the storage unit and that he had dominion and control—he stored his drugs in the backpack where the gun was found, in the unit *he* paid for.[14] And unlike in *Highsmith*, ammunition matching the type of gun in the storage unit was contemporaneously found in Baldon's residence. Most importantly, in *Kelso*, the defendant denied owning the drugs and there was another person *physically* present at the time of the arrest—creating the equally likely background inference that the gun was the driver's rather than the defendant's. Here though, Baldon admitted it was his drugs and does not argue that Angelique Baker physically accessed the unit; only that there was a possibility. That is not *Kelso*, *Cazares*, or *Highsmith*.

---

[14] The Presentence Investigation Report states that it was Baldon's storage unit. Because Baldon did not affirmatively contest this portion of the report, the district court could have relied on this statement alone in finding that Baldon possessed the firearm. *See* Fed. R. Crim. P. 32(i)(3)(A).

**V.**

Because we conclude that the district court incorrectly calculated Baldon's criminal history by improperly including two points for his prior carjacking convictions, we vacate and remand for resentencing.[15]

**AFFIRMED in part, VACATED in part and REMANDED.**

---

[15] Because we remand based on a procedural error, we decline to consider Baldon's argument that the sentence was substantively unreasonable. *See United States v. Kilby*, 443 F.3d 1135, 1140 (9th Cir. 2006) ("If there was material error in the Guidelines calculation, we will remand for resentencing, without reaching the question of whether the sentence as a whole is reasonable.").